IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

MATTHEW J. BLACKSTONE,            :
                                  :
        Petitioner,               :
                                  :
        v.                        :          Case No. _16 CV 8600_
                                  :
DAVID ORTIZ, WARDEN; ASHLEY STARK, :         COMPLAINT
PA-C; SHERRI LILLY, PA-C; MS.     :
SMITH, ASSO. WARDEN; KELLY LUCAS, :
HEALTH SERVICES ADMIN.; DR. ISAAC :
ALEXIS, CLINICAL DIRECTOR; BART   :
MASTERS, WARDEN; MR. COLLINS, AS- :
SO. WARDEN, OPERATIONS; C. EICHEN- :
LAUB, MID-ATLANTIC REGIONAL DIREC- :
TOR; IAN CONNORS, NAT'L INMATE AP- :
PEALS ADMIN.; WILLIAM GOODE, PA-C; :
DR. JORGE VAZQUEZ-VELAZQUEZ, ACT- :
ING CLINICAL DIRECTOR; CHANDRA CA- :
ROTHERS, PA-C; DR. PRADIP PATEL;  :
DR. MICHAEL S. COHEN; R. NEWBURY, :
R.N.; DR. S. DONEPUDI; ROLANDO    :
NEWLAND, CLINICAL DIRECTOR; JA'NAY :
SHELTON, PA-C; DR. LOUIS G. FARES, :
F.A.C.S.; STEVEN ESPOSITO, MLP; N. :
WEST, R.N.; VICENTE ELIAS, MLP;   :
PHILLIP WAWRZYNIAK, NREMT-P; DR.  :
NICOLETTA TURNER-FOSTER; DR. JEF- :
FREY STEINIG; ET AL, F.C.I. FORT  :
DIX; ET AL, F.C.I. MCDOWELL;      :
                                  :
IN THEIR INDIVIDUAL CAPACITIES,   :
                                  :
        Respondents               :

RECEIVED

NOV 17 2016

AT 8:30_____M
WILLIAM T. WALSH CLERK

NOW COMES, MATTHEW J. BLACKSTONE, Petitioner, pro se, sui juris, in

proprio, and muto, persona, and in the interest, and pursuit, of justice, who

prays that this AUGUST Court hold him to less stringent standards than those

attributed to a more, well-seasoned attorney. HAINES V. KERNER, 404 U.S. 519

(1972), and ERICKSON V. PARDUE, 551 U.S. 89 (2007).

## I. JURISDICTION & VENUE

1. This is a Civil Action authorized by, and pursuant to, BIVENS V. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS, 403 U.S. 388 (1971), and the Federal Rules of Civil Procedure, to redress the deprivation, under color of State, and federal, law, of rights secured by the United States Constitution. This Court has jurisdiction under, and pursuant to, 28 U.S.C. §§ 1331, and 1341(a)(3). Petitioner seeks declaratory relief, pursuant to 28 U.S.C. §§ 2201, and 2202, as well as Rule 65 of the Federal Rules of Civil Procedure.

2. The United States District Court of New Jersey, Camden Division, is an appropriate venue under, and pursuant to, 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to these claims occurred. Petitioner respectfully directs the Court's attention to the fact that the events giving rise to these claims, ORIGINALLY, occurred, and began, in F.C.I. McDowell, West Virgina, before being transferred by the F.B.O.P. to F.C.I. Fort Dix, New Jersey.

## II. PETITIONER

3. Petitioner, MATTHEW J. BLACKSTONE, is, and was, at all times, mentioned, HEREIN, a prisoner, and in the custody, of the Federal Bureau of Prisons (F.B.O.P.), F.C.I. Fort Dix, New Jersey.

## III. RESPONDENTS

4. Respondent, DAVID ORTIZ, WARDEN, F.C.I. Fort Dix.

5. Respondent, ASHLEY STARK, PA-C, HEALTH SERVICES, F.C.I. McDowell.

2

6. Respondent, SHERRI LILLY, PA-C, HEALTH SERVICES, F.C.I. McDowell.

7. Respondent, MS. SMITH, ASSOCIATE WARDEN, F.C.I. McDowell.

8. Respondent, KELLY LUCAS, HEALTH SERVICES ADMINISTRATOR, F.C.I. McDowell.

9. Respondent, DR. ISAAC ALEXIS, CLINIACL DIRECTOR, F.C.I. McDowell.

10. Respondent, BART MASTERS, WARDEN, F.C.I. McDowell.

11. Respondent, MR. COLLINS, ASSOCIATE WARDEN, OPERATIONS, F.C.I. McDowell.

12. Respondent, C. EICHENLAUB, MID-ATLANTIC REGIONAL DIRECTOR, Federal Bureau of Prisons.

13. Respondent, IAN CONNORS, NAT'L INMATE APPEALS ADMIN., Central Office, Federal Bureau of Prisons.

14. Respondent, WILLIAM GOODE, PA-C, F.C.I. McDowell.

15. Respondent, DR. JORGE VAZQUEZ-VELAZQUEZ, ACTING CLINICAL DIRECTOR, F.C.I. McDowell.

16. Respondent, CHANDRA CAROTHERS, PA-C, F.C.I. McDowell.

17. Respondent, DR. PRADIP PATEL, F.C.I. Fort Dix.

18. Respondent, DR. MICHAEL S. COHEN, St. Francis Medical Center, Trenton, N.J.

19. Respondent, R. NEWBURY, R.N., F.C.I. Fort Dix.

20. Respondent, DR. S. DONEPUTI, F.C.I. Fort Dix.

21. Respondent, ROLANDO NEWLAND, CLINICAL DIRECTOR, F.C.I. Fort Dix.

22. Respondent, JA'NAY SHELTON, PA-C, F.C.I. Fort Dix.

23. Respondent, DR. LOUIS G. FERES, F.A.C.S., F.C.I. Fort Dix.

24. Respondent, STEVEN ESPOSITO, MLP, F.C.I. Fort Dix.

25. Respondent, N. WEST, R.N., F.C.I. Fort Dix.

26. Respondent, VICENTE ELIAS, MLP, F.C.I. Fort Dix.

27. Respondent, PHILLIP WAWRZYNIAK, NREMT-P, F.C.I. Fort Dix.

28. Respondent, DR. NICOLETTA TURNER-FOSTER, F.C.I. Fort Dix.

29. Respondent, DR. JEFFREY STEINIG, F.C.I. Fort Dix.

30. Respondent, ET AL, F.C.I. McDowell.

3

31. Respondent, ET AL, F.C.I. Fort Dix.

32. Each Respondent is sued INDIVIDUALLY at all times mentioned in this COMPLAINT. Each Respondent acted under the color of State, and federal, law.

## IV. STATEMENT OF FACTS

33. Petitioner's serious medical condition(s) began in, or about December, 2013, when he went to the Medical Health Services Department at F.C.I. McDowell, W. Virginia, complaining of sharp, abdominal pains, caused by, what he believed was at the time, a hernia. He was attended by Respondent, ASHLEY STARK.

34. This is, now, where the F.B.O.P. "diagnostic flip flopping" begins, in ernest. On February 4, 2014, Petitioner's "Bureau of Prisons Health Services Clinical Encounter" (Clinical Encounter) sheet (See EXHIBIT "A"), Page 2 of 4, states "Abdomen Inspection Yes: Umbilical Hernia"; "Palpation Umbilical hernia measures 1.5cmx2cm. Page 3 of 4, states "Prostate Yes: Hypertrophy". Here, said HERNIA WAS DIAGNOSED FOR THE VERY FIRST TIME. He was attended by Respondent, ASHLEY STARK.

35. On March 6, 2014, Petitioner's Clinical Encounter sheet (See EXHIBIT "B"), Page 2 of 2 states "ASSESSMENT: BHP, Benign Hypertrophy of Prostate, 600.00 - Current, Temporary/Acute, Initial; Indication: BHP, Benign Htperthrophy Prostate". He was attended by Respondent, SHERRI LILLY.

36. On July 7, 2014, Petitioner's Clinical Encounter sheet (See EXHIBIT "C"), Page 1 of 3 states "Inmate also states he has a hernia he would like checked." Page 2 of 3 states "Abdomen Inspection Yes: Hernia(s), Umbilical Hernia"; "ASSESSMENT: BHP, Benign Hypertrophy of Prostate, 600.00 - Current, Temporary/Acute, Improved; Ventral hernia, unspecified, 553.20 - Current,

4

Temporary/Acute, Initial; **Indication:** BPH, Benign Hypertrophy of Prostate".
Page 3 of 3 states **"New Consultation Requests: Consultation/Procedure**
Gastroenterology **Reason for Request:** Vebtral hernia noted on physical exam
measuring 5.0 cm, area tender to palpation on exam.; **Other:** CMP and RF ordered
and consult (consultation) made for ventral hernia;" He was attended by
Respondent, SHERRI LILLY. Petitioner respectfully directs this Court's
attention to **EXHIBIT "A"**, whereby, **SAID HERNIA WAS ALREADY DIAGNOSED** on
02/04/2014, but, now, Respondent believes it should be re-checked. Typical.

37. To "add further insult to injury", the Medical Health Services Dept.
arbitrarily decided to charge Petitioner for three (3) of the prior
examinations, at $2.00 each, for a total of $6.00. So, somewhat "fed up",
Petitioner decided, after the 07/07/2014 examination, to file an "INMATE
REQUEST TO STAFF" (Cop-Out), dated July 23, 2014, to Respondent, MS. SMITH,
Associate Warden (See **EXHIBIT "D"**), asking her to, **ONCE AGAIN**, look into
refunding/crediting Petitioner said $6.00 back into his account. In addition,
Petitioner, also, reminded MS. SMITH, in same said Cop-Out, that Medical Health
Services had **REQUESTED APPROVAL FOR HIM TO HAVE A HERNIA OPERATION**, but that he
was, still, not being helped, and that he was, also, still, in a great deal of
pain. **MS. SMITH's** response was that since Petitioner was "not in any chronic
care clinics currently, so a charge applies for sick call appointments". She,
also, states that "a consult (consultation) was submitted for your hernia to be
reviewed at the Utilization Review Committee. If approved this will have to go
to the Region (Mid-Atlantic Regional Office) for approval.".

38. Petitioner received said Utilization Review Committee response, dated
July 31, 2014 (See **EXHIBIT "E"**), stating, in part: "...It was the decision of
the Utilization Review Committee that your case has been (in actual boldface):
**TABLED AT THIS TIME...".** Said response continues on to explain that "...If the

decision to "TABLE AT THIS TIME" was made, this indicates that you will be scheduled for an additional test and/or evaluation and/or repeat evaluation in-house. Your case then will be presented to the Utilization Review Committee at a later date...". More unnecessary, useless, taxpayer-funded testing!

39. On August 28, 2014, Petitioner's **Clinical Encounter** sheet (See **EXHIBIT "F"**), Page 2 of 3, states "**Abdomin Inspection** Yes: Within Normal Limits; **Auscultation** Yes: Nonno-Active Bowel Sounds; **Genitourinary General** Yes: Within **Normal** Limits; Urine Color - Amber, **Scrotum** Yes: Within Normal Limits; **Testicles** Yes: Within Normal Limits." Page 3 of 3 states "**Indication:** BHP, Benign Hypoertrophy of Prostate". Petitioner was attended by Respondent, **ASHLEY STARK**. Laughingly enough, the F.B.O.P., now, expects this august Court to believe that Petitioner's hernia was "MIRACULOUSLY CURED", and, thus, **SUDDENLY DISAPPEARED!**

40. At this juncture in time, Petitioner began to file, and **EXHAUST**, pursuant to this Court's pre-requisite filing conditions, all of his **LEGAL ADMINISTRATIVE REMEDIES** (See **EXHIBIT "G"** through "J"). Petitioner, of course, received no satisfaction, or relief, WHATSOEVER, from said **LEGAL ADMINISTRATIVE REMEDIES**. Please note that these were filed in F.C.I. McDowell.

41. While filing said **LEGAL ADMINISTRATIVE REMEDIES**, and waiting for their responses, Petitioner continued to send E-Mails through the correctional institution's TRULINKS computer system, to Respondents, **DR. ISAAC ALEXIS**, dated September 29, 2014, **MR. COLLINS**, dated October 3, 2014, **BART MASTERS**, dated October 17, 2014, and October 30, 2014, to which **PETITIONER RECEIVED ONLY ONE (1) RESPONSE** from the Warden, Respondent BART MASTERS, dated November 5, 2014 (See **EXHIBIT "K"** through "O"), ridiculously stating that I was evaluated on October 31, 2014 by the PA, and that "All your vitals signs were within normal limits. Due to your reoccurring abdominal pain, new labs (lab tests) were

ordered and a consult (consultation) for a urologist was written.". This sanctimonious, and insulting, response from the Warden infers that Petitioner's hernia, somehow, AGAIN, WAS "MIRACULOUSLY CURED", AND, THUS, AGAIN, SUDDENLY DISAPPEARED, and that the process of testing, and re-diagnosing, must begin anew! MEANWHILE, Petitioner had to suffer the pain, and imposed indignity, of Respondents' indifference, laziness, and incompetence.

42. On October 31, 2014, Petitioner's **Clinical Encounter** sheet (See EXHIBIT "P"), Page 1 of 3, states "**Chief Complaint:** Urinary Problem; **Subjective:** Inmate presents with c/o (claim of) suprapubic abdominal pain on and off for 1 month. Inmate stated the pain has worsened over the past week. Inmate had also had persistant painless hematuria X 10 months. Inmate denied dysuria, urgency, and urinary frequency.; **Pain Location:** Abdomen - Suprapubic". Page 2 of 3 states "**Abdomen Auscultation Yes:** Normo-Active Bowel Sounds; **Genitourinary Scrotum No:** Hernia, Hernia-Direct; **Testicles No:** Mass(es); **ASSESSMENT:** Abdominal pain 789.0 - Current, Temporary/Acute, Initial Microscopic hematuria, 599.72 - Curent, Temporary/Acute, Initial". Page 3 of 3 states "**Reason For Request:** Inmate presents with c/o (claim of) suprapubic abdominal pain on and off for 1 month. Inmate stated the pain has worsened over the past week. Inmate has also had persistent painless hematuria X 10 months. Sending for Cystoscopy." Petitioner was attended by Respondent, WILLIAM GOODE. Once again, "MIRACULOUSLY CURED"!

43. Petitioner received another Utilization Review Committee response, dated October 31, 2014 (See EXHIBIT "Q"), stating, in part, "...This is to advise you that on 10/31/14, your medical case/condition was presented to the Utilization Review Committee to determine the clinical indication and/or benefit, as well as the urgency and non-urgency of referring you to the community to undergo additional diagnostic testing, and/or an evaluation by a

specialist. Community referral request viewed: UROLOGY It was the decision of the Utilization Review Committee that your case has been (in bold): APPROVED".

44. On December 15, 2015, Petitioner's Clinical Encounter sheet (See EXHIBIT "R"), Page 1 of 3, states "Chief Complaint: Upper Extremity Pain; Subjective: Inmate Presents with c/o (claim of) shoulder pain that he says he has had for 10 months. He states that he has progressively gotten worse to the point that now he cannot passively move it above shoulder height. he also c/o pain in his knees and ankles. He denies any injury and states that he has been using aspirin OTC (Over the counter) without relief. Inmate also states that he has a hard time urinating but that his PSA was recently normal. He also states that he has had a Digital rectal exam and he is taking medication that does help but has not fully cured the problem.; Pain Location: Shoulder-Right". Page 2 of 3 states "ASSESSMENT: BHP, Benign Hypertophy of of Prostate, 600.00 - Current, Temporary/Acute, Improved Joint pain, site unspecified, 719.40 - Current, Temporary/Acute, Not Improved/Same; Indication: BHP, Benign Hypertophy of Prostate". He was attended by Respondent, CHANDRA CAROTHERS, Neither issues of the extreme hernia, or shoulder, pain was addressed.

45. WITH NO RESPONSE, WHATSOEVER, ABOUT ANYTHING, for, almost two (2) more months, Petitioner goes on to file another "INMATE REQUEST TO STAFF", directed to Medical Health Services, dated December 17, 2014 (See EXHIBIT "S"), "requesting a health care prevention visit", to which their response was "Will give to P.A. Stark (Respondent)". ONCE AGAIN, utterly useless, and shameless!

46. Petitioner filed a Cop-Out, dated December 29, 2014, to Medical Health Services (See EXHIBIT "T"), complaining of pains in his feet, legs, and hernia, requesting lab results, requesting a Preventive Health Care visit. The response was "...Will be placed on Call Out...". Of course.

47. On January 7, 2015, Petitioner's Clinical Encounter sheet (See EXHIBIT

"U"), Page 1 of 4, states "Chief Complaint: Preventive Health Visit Subjective: Inmate presents for preventive health visit. he states that his feet hurt in his arches. He also states that he cannot move his right arm above his shoulder. He also states that he just hurts all over. He was recently tested for rheumatoid factor-the results were negative.". Page 2 of 4 states ""Abdomen Inspection Yes: Umbilical Hernia; ASSESSMENT: Unspecified general medical examination, V70.9 - Current, History/Resolved,New Occurrence - Inmate is having his yearly physical." Page 3 of 4 states "Other: Inmate was issued an abdominal binder for his umbilical hernia and arch supports for his feet.". He was attended by Respondent CHANDRA CAROTHERS.

48. On January 13, 2015, Petitioner's Clinical Encounter sheet (See EXHIBIT "V"), Page 1 of 2, states "Chief Complaint: Preventive Health Visit Subjective: Inmate presents for preventive health visit. He states that his feet hurt in his arches. He also states that he cannot move his right arm above his shoulder. He also states that he just hurts all over. he was recently tested for rheumatoid factor-the results were negative.". Page 2 of 2 states "Abdomen Inspection Yes: Umbilical Hernia; ASSESSMENT: Unspecified general medical examination, V70.9 - Current, History/Resolved, New Occurence - Inmate is having his yearly physical.; Indication: BHP, Benign Hypertophy of Prostate". He was attended by CHANDRA CAROTHERS. Incredibly enough, but completely expected, considering Health Services' "mentality", and total lack of any semblance of respect, or professionalism, this Clinical Encounter is EXACTLY, ALMOST, WORD FOR WORD, the same as the above-referenced one, Item No. 47.!

49. In a continuation of said January 13, 2015 visit (EXHIBIT "V"), Petitioner's Clinical Encounter sheet (See EXHIBIT "W"), Page 1 of 1, states "ADMINISTRATIVE NOTE 1 Inmate had a previous consult (consultation) for gastroentology that needs to be for general surgery. Inmate has a ventral

9

hernia. I will cancel the previous consult (consultation) and I am now requesting the general surgery consult (consultation).; Consultation/Procedure General Surgery **Reason For** Request: Umbilical hernia noted on physical exam measuring 5.0 cm; area tender to palpation on exam; Consultation/Procedure Gastroenterology **Reason For Request:** Ventral hernia noted on physical exam measuring 5.0 cm; area tender to palpation on exam." He was, also, attended by Respondent, CHANDRA CAROTHERS.

50. Petitioner respectfully directs the Court's attention to the most disturbing fact that THIS WAS THE VERY FIRST TIME, IN THE THIRTEEN (13) MONTHS SINCE PETITIONER FIRST COMPLAINED ABOUT HIS HERNIA that Health Services, FINALLY, mentions anything about Petitioner being recommeded for hernia surgery. PLEASE NOTE that this was "...requesting the general consult (consultation)..." ONLY, AND NOT, ACTUALLY, scheduling for said surgery! Let's hear it for small miracles!

51. Petitioner proceeded to send an E-Mail, dated January 20, 2015 (See EXHIBIT "X"), to Respondent, MR. COLLINS, per his request, to check on the status of the LEGAL ADMINISTRATIVE REMEDY to the B.O.P. Central Office in Washington, D.C. (EXHIBIT "J"). Not surprisingly, Petitioner never heard back from Respondent, MR. COLLINS.

52. With sad, and disappointing results, Petitioner proceeded to submit another Cop-Out, dated January 21, 2015, to Medical Health Services, requesting "know the status of the consults (consultations) to urologist, orthopedics and a consult (consultation) for my hernia." Their response was "Urology - Pending Scheduling Orhto - Pending Scheduling General Surgery for Hernia - Disapproved". There seriously are no words that can explain away this type of malpractice behavior. (See EXHIBIT "X1").

53. On March 24, 2015, Petitioner submitted a SICK CALL REQUEST to Medical

10

Health Services (See EXHIBIT "Y"), further complaining about his shoulder getting worse, his calves still being swollen, knots in his knees, pain in the back of his legs, spots on his feet, and legs, his Achilles tendons being extremely painful, that his prostate medicine no longer helps him, that his hernia is still causing him great pain, discomfort, and lack of sleep, along with many other symptoms, and requests. Respondent, CHANDRA CAROTHERS, advised him that he would be put on a Call Out.

54. Petitioner went on to file a FINAL Cop-Out, directed to Medical Health Services, dated May 20, 2015 (See EXHIBIT "Z"), stating that he went to a urologist, that he was advised that HE WAS SENT TO THE WRONG DOCTOR, and wished to know what F.C.I. McDowell was, now, doing regarding his medical problem(s). He was, abruptly, VERBALLY, advised, that they "...will let you know...". Sure they will. PLEASE NOTE: THIS COP-OUT WILL BE THE FINAL DOCUMENT, AND/OR MEDICAL VISIT, PETITIONER WILL HAVE AT F.C.I. MCDOWELL.

55. Petitioner respectfully directs the Court's attention to the fact that HE WAS, NOW, TRANSFERRED, FOR UNKNOWN REASONS, FROM F.C.I. MCDOWELL, TO F.C.I. FORT DIX, ON, OR ABOUT, MID-JUNE, 2015.

56. Almost two (2) weeks later, on July 2, 2015, Petitioner's had his first Clinical Encounter at F.C.I. Fort Dix. His Clinical Encounter sheet, (See EXHIBIT "AA"), Page 1 of 5, states, in essence, that he has BHP, and right shoulder problems, that he was evaluated by orthopedics, had an M.R.I. on said shoulder, which showed AC joint arthritis, that his range of arm movement is limited, he has not had hard stools, has Hematochezia when he wipes, CLAIMS that he has an enlarged prostate, that he has a MILD umbilical hernia that worsens when he sneezes, that the pain radiates to the groin, that he cannot do any exercise(s) because it hurts all of the time, that he was seen by a urologist, and was told that he was sent to the wrong place. Page 3 of 5 states

11

ASSESSMENT: BHP, Benign Hypertophy of Prostate, 600.00 - Current, Temporary/Acute, Not Improved/Same - Patient has Nocturia despite present medical therapy. Vericose veins, asymptomatic, 454.9 - Current, Chronic, Initial Ventral hernia, unspecified, 553.20 - Current, Temporary/Acute, Not Improved/Same; Indication: BHP, Benign Hypertophy of Prostate". He was attended by Respondent, DR. PRADIP PATEL. This Court will kindly note that everything DR. PATEL documented in this Clinical Encounter sheet had already been documented, ALMOST, WORD FOR WORD, on every other Clinical Encounter sheet from F.C.I. McDowell. If DR. PATEL has simply bothered to properly read Petitioner's medical case file, which was, obviously, available to him, he would have, POSSIBLY, noticed this!

57. OVER, APPROXIMATELY, TWO (2) MONTHS LATER, on September i17, 2015, Petitioner was taken from F.C.I. Fort Dix, to nearby St. Francis Medical Center for a consultation (See EXHIBIT "BB"). It was determined that he is "Notable for an umbilical hernia, which is still present, he said he has had it for about a year and also BHP and lower urinary tract symptoms.; PHYSICAL EXAMINATION:...ABDOMEN: Soft, he does have tenderness over the umbilicus consistent with his known and present umbilical hernia...GENITOURINARY: Notable for bilateral descended testes; PROBLEM LIST: 1. Umbilical hernia. 2. BHP. 3. Overactive bladder and nocturia.; RECOMMENDATIONS: At this time, I would recommend a general surgery consultation for his bothersome umbilical hernia...". He was attended by Respondent, DR. MICHAEL S. COHEN.

58. Clinical Encounter sheet, also, dated September 17, 2015 (See EXHIBIT "CC"), is the F.C.I. Fort Dix Health Services attachment/summary to the St. Francis Medical Center consultation on that same day, as is described in the above-referenced Item No. 57. This document was generated by Respondent, R. NEWBURY.

59. Also, on September 23, 2015, as a separate follow-up to the above-referenced Item No. 57., and 58., Petitioner's **Clinical** Encounter sheet (See EXHIBIT "DD"), Page 1 of 5 states, in part, "**Subjective:** ...BHP: Urology consult (consultation) is scheduled on 9/17/15...Umbilical Hernia: reducible to some extent. Wears a hernia belt. Given lower floor (bedroom)...Vericose veins: stockings...". Page 2 of 5 states "Abdomen Palpation Yes: Soft No: Guarding, 4cmX4cm umbilical hernia+ not completely reducible, painful when attempting, but partially reducible; ASSESSMENT: BHP, Benign Hypertophy of Prostate, 600.00 - Current, Temporary/Acute, Not Improved/Same". Page 3 of 5 states "Ventral hernia, unspecified, 553.20 - Current, Temporary/Acute, Worsened; **Indication:** BHP, Benign Hypertophy of Prostate"; Page 4 of 5 states "**Reason for Request:** Initial evaluation of General Surgery: Pt. (patient) is a 52 year old male with hx (?) of umbilical hernia which is very painful when an attempt is made to reduce it and only successful partially. The size has increased from quarter size in July 2015 to 4cmX4cm; **Provisional Diagnosis:** Irreducible and painful umbilical hernia". He was attended by Respondent, **Dr. S. Donepudi.** Once again, please note that, even with all of the pain diagnoses for some time now, Petitioner, STILL, WAS NOT OPERATED ON UNTIL ELEVEN (11) MONTH LATER, AUGUST, 2016!

60. Finally, also, on September 23, 2015, yet, another Utilization Review Committee Case Review Decision was issued (See EXHIBIT "EE"), stating, in part, "Dear patient: Your Medical case has been reviewed by the members of the Utilization Review Committee (URC). The request for: RADIOLOGY ULTRASOUND Your case was reviewed and approved; your procedure/consult (consultation) will be scheduled accordingly...". This dcoument was generated by Respondent, R. NEWLAND.

61. On October 9, 2015, **Clinical Encounter** sheet (See EXHIBIT "FF"), Page

1 of 3, states, in part, "Pt. (patient) is seen for f/u (follow-up) of his umbilical hernia...Approved to be seen by surgeon. Size remained the same and is not reducible fully. Pt. is on lower bunk and first floor Pain: No". Page 2 of 3 states "Abdomen Palpation Yes: Soft, umbilical hernia noted not completely reducible. No guarding noted or discoloration seen. 4X4 cms in size.; ASSESSMENT: Ventral hernia, unspecified, 553.20 - Current, Temporary/Acute, Not Improved/Same". he was attended by Respondent, DR. S. DONEPUDI. The same, repetitive diagnoses is overwhelmingly addictive to Medical staff. Also, please take note that, "MIRACULOUSLY" enough, the intense hernia pain has disappeared!

62. On December 22, 2015, a SURGICAL CONSULTATION sheet (See EXHIBIT "GG"), stated "HPI: 52 y/o male has had an umbilical hernia since 2/2014. It has enlarged in size and now is non-reducible and painful.; Findings: Large Incarcerated Umbilical hernia. Unable to palpate fascial edges.; Plan: ...My office will schedule the surgery...". This document was generated by Respondent, DR. LOUIS G. FARES II.

63. Also, on December 22, 2015, Clinical Encounter sheet (See EXHIBIT "HH"), Page 1 of 2, states "Chief Complaint: GASTROINTESTINAL Subjective: Pt (patient) to clinic today to follow up regarding umbilical hernia. Pt admits to continued presence of hernia at this time. + associated tenderness with affected area. Previously referred to and approved to be seen by general surgery for consideration of repair. Pt is scheduled to be seen by general surgeon today regarding umbilical hernia. Pain: Not Applicable; Exam Comments 2.5cm x 3cm non fully reducible umbilical hernia noted. ASSESSMENT: Umbilical hernia, 553.1 - Current, Chronic, Initial; Other: Further requireed regarding intervention will be addressed today by general surgeon Pt informed Continue used of abdominal binder". He was attended by Respondent, JA'NAY SHELTON. The

very important issues that remain unaddressed here are: (1) What exactly does it mean "...Pt admits to continued presence of hernia at this time"? (2) What exactly does it it mean "...Pain: Not Applicable"? (3) It seems that the size of the hernia has, somehow, "MIRACULOUSLY" reduced itself! Petitioner respectfully brings to this Court's attention that, in the following **Clinical Encounter**, Item No. 64, said hernia size is, ONCE AGAIN, "MIRACULOUSLY" BACK TO ITS PREVIOUS SIZE!

64. Finally, later, on December 22, 2015, **Clinical Encounter** sheet (See **EXHIBIT "II"**), states "Pt (patient) was seen by Dr. Fares on 12/22/15 entering orders hand written consult (consultation) to medical records for scanning; **Reason for Request:** robitic (?) assisted laparoscopic umbilical hernia repair with mesh - Pt. is a 52 year old male with hx (?) of umbilical hernia which is very painful when an attempt is made to reduce it and only successful partially. The size has increased from quarter size in July 2015 to 4cmX4cm." He was attended by Respondent, R. NEWBURY.

65. On February 5, 2016, clearly, ALMOST, SEVEN (7) WEEKS LATER, Petitioner's **Clinical Encounter** sheet (See **EXHIBIT "JJ"**), UNSUPRISINGLY states "Pt. (patient) placed on medical hold for approved Umbilical hernia repair." This document was generated by Respondent, DR. S. DONEPUDI. Petitioner was put on "medical hold".

66. Petitioner, now, respectfully advises this Court that "we are now in the home stretch" of this "dog and pony show"! On March 8, 2016, Petitioner filed a Cop-Out to Medical Records (See **EXHIBIT "KK"**) requesting the results of his ultra sound, and of the x-rays of his feet, and knees. In addition, he asks to know the status of his "non-existent" hernia surgery, and if it was approved. He was given the results of his ultra sound, but the "non-existent"

15

hernia surgery remained unaddressed.

67. A FULL FOUR (4) MONTHS LATER, on July 13, 2016, in a, possibly, "crazed, and panicky state of mind", a Clinical Encounter sheet (See EXHIBIT "LL") was FALSELY generated stating, in essence, that he failed to show for a scheduled appointment/Call Out. It falsely claims that he was not on the premises when called, failed to notify any stafff, and that he was paged twice on the overhead P.A. system by hospital staff, and, still, did not show. This falsely written document was generated by Respondent, STEVEN ESPOSITO. Petitioner DOES NOT HAVE ANY ACCESS, AND WOULD NEVER BE GIVEN ANY ACCESS ANYWAY, WHATSOIEVER, to that day's Medical, and institution "duty logs". But if this Court deems it necessary, and appropriate, to subpoena, and request, such "duty logs" from F.C.I. Fort Dix, this Court would, clearly, discover that Petitioner's Housing Unit No. 5752 was on "lock down", with the rest of F.C.I. Fort Dix, and WAS NOT RELEASED UNTIL A LITTLE AFTER 1:00 P.M. FOR LUNCH because the facility was closed due to an ambulance being allowed in. This is just another cowardly, brazen, attempt to "cover-up" their incompetence, unaccountabilty, and total lack of any medical professionalism.

68. On July 26, 2016, Petitioner's Clinical Encounter sheet (See EXHIBIT "MM"), Page 1 of 3, stated "Subjective: 53 y/o male patient seen today for medication refill. Patient has history of 6 cm non reducible round umbilical hernia. On treatment with Motrin for pain control. Today he is in NAD (?), no SOB (?) and ambulates with difficulty. Patient was seen by the General surgery, he is schedule for surgery.; Pain: Pain Assessment Date: 07/26/2016 13:33 Location: Abdomen - Epigastric Quality of Pain: Sharp Pain Scale: 9". Page 2 of 3 states "Abdomen Inspection Yes: Within Normal Limits, Peristalsi, Bulging Flanks, Hernia(s), Umbilical hernia, Distension; ASSESSMENT: Abdominal

16

pain, 789.0 - Current Umbilical hernia, 553.1 - Current". Page 3 of 3 states
"Indication: Umbilical hernia, Abdominal pain". He was attended by Respondent,
VICENTE ELIAS. Kindly notice that SAID HERNIA HAS, NOW, INCREASED
SUBSTANTIALLY.

69. On August 1, 2016, Petitioner's Clinical Encounter sheet (See EXHIBIT
"NN") simply states "Patient/inmate PAT (?) for upcoming procedure". He was
attended by Respondent, N. WEST.

70. After OVER TWO AND A HALF (2½) YEARS being diagnosed with a hernia, on
August 13, 2016, Petitioner, FINALLY, received his, much needed, hernia
surgery. Petitioner, REALLY, has no words, for this Court, to express how
psychologically, philosophically, as well as, spiritually relieved he is to,
FINALLY, have had his much-needed hernia surgery! Clinical Encounter sheet
(See EXHIBIT "OO"), Page 1 of 4, states "Subjective: Patient back from STFMC
s/p (?) Umbilical hernia Repair. See d/c (?) instructions. He complains of
pain over the surgical area no nausea no vomiting or active bleeding. Dressing
in place. Pain: Yes Pain Assessment Date: 08/18/2016 19:34 Location: Abdomen -
Diffuse Quality of Pain: Sharp Pain Scale: 7; Comments: Post surgical pain
S/P (?) Umbilical hernia repair." He was attended by Respondent, VICENTE
ELIAS.

71. If it pleases this Court, let it be, now, known that this is the full,
and final, culmination of, what should have simply been a truly routine hernia
examination, diagnosis, treatment, and surgery, that turned into a typically
ugly, but perfect, example of the B.O.P.'s indifferent, incompetent,
unprofessional, and, as well as, total unaccountable behavior that caused
Petitioner gross, and quite unnecessary, pain, and suffering. Petitioner prays
that this august Court will render a fair evaluation, and be able to take
these statements of facts to its logical, and profound, conclusion(s).

72. To bring some kind of "comically cosmic" closure to these medical
"proceedings", Petitioner respectfully offers, as further evidence of the

17

B.O.P.'s literally "adding insult to injury", his Cop-out, directed to Medical records, dated August 30, 2016 (See EXHIBIT "PP"), humbly requesting that the $2.00 fee charged to him for his recent hernia surgery be returned because he was on "chronic care status", and, therefore, not liable for said charge. With the passage of time, his account was credited for said $2.00 charge.

73. Respondents purposely committed Intentional Infliction of Emotional Distress (I.I.E.D.), whereby, as cited in SCHMIDT V. ODELL, 64 F. Supp. 2d 1014 (D. KS., 1999), a prisoner who had both legs amputated was not given a wheelchair, or other accomodation, by the jail, and, thus, had to crawl around on the floor.

74. Pursuant to the Eighth Amendment of the United States Constitution against cruel, and unusual punishment, and as is explained in ESTELLE V. GAMBLE, 429 U.S. 97, 103 (1976), "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."

75. A serious medical need is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." HILL V. DEKALB REGIONAL YOUTH DETENTION CENTER, 40 F.3d 1176, 1187 (11th Cir., 1994).

74. A serious medical need arises if the "failure to treat a prisoner's condition could result in further significant injury, or the 'unnecessary, and wanton infliction of pain'". ESTELLE, Supra, at 104; JETT V. PENNER, 439 F.3d 1091, 1096 (9th Cir., 2006).

76. In considering whether Petitioner had a serious medical need, Petitioner asserts, and believes, that this Court should look at several important factors, including: (A) Whether a reasonable doctor, or patient,

would consider the need worthy of comment, or treatment; (B) Whether the
condition significantly affects daily activities; and (C) Whether the patient
has chronic, and serious, pain. BROCK V. WRIGHT, 315 F.3d 158 (2nd Cir.,
2003).

77. The "line" of deliberate indifference was "crossed" when: (A) Prison
officials knew about Petitioner's serious medical needs; and (B) Prison
officials failed to reasonably respond to it. ESTELLE, Supra, at 104;
GUTIERREZ V. PETERS, 111 F.3d 1364, 1369 (7th Cir., 1997). Prison officials
KNEW FULLY WELL about Petitioner's serious medical condition(s), simply,
because it WAS obvious. FARMER V. BRENNAN, 511 U.S. 825, 842 (1995).

78. Petitioner's entire, documented medical history, as has been described
in the afore, clearly, shows, and proves, a state of gross deliberate
indifference when: (A) A prison doctor fails to appropriately respond, or does
not respond at all to a patients serious medical needs. SCOTT V. AMBANI, 577
F.3d 642 (6th Cir., 2009); SPRUILL V. GILLIS, 372 F. 3d 218 (3rd Cir., 2004);
MELOY V. BACHMEIER, 302 F.3d 845, 849 (8th Cir., 2002); (B) Prison guards, or
other non-medical officials, intentionally deny, or delay, a patient's access
to treatment. BROWN V. DISTRICT OF COLUMBIA, 514 F.3d 1279 ( D.C. Cir., 2008);
(C) When these same non-medical officials interfere with the treatment that
the patient's doctor has ordered. ESTELLE, Supra, at 104-05; LOPEZ V. SMITH,
203 F.3d 1122 (9th Cir., 2000); (D) Prison officials can be held liable even
for following the advice of prison medical officials if it is obvious, even to
a layperson, that the patient is in need of hospitalization, or other critical
medical care. MCRAVEN V. SANDERS, 577 F.3d 974 (8th Cir., 2009; and (E)
Otherwise, prison officials may rely on what a prison doctor tells them.
JOHNSON V. DOUGHTY, 433 F.3d 1001 (7th Cir., 2006).

## V. EXHAUSTION OF LEGAL ADMINISTRATIVE REMEDY(S)

79. Petitioner, **MATTHEW J. BLACKSTONE**, used the prisoner grievance
procedure(s) available at F.C.I. McDowell to try and solve the problem, case,
and matter, at hand. In EXHIBIT "G" through "J", as is described in the afore
Item No. 40., Petitioner presented the facts relating to the within instant
**COMPLAINT**, and was sent responses saying that said **LEGAL ADMINISTRATIVE
REMEDY(S)**/prisoner grievances had been denied. At every "turn", Petitioner
appealed each of said denials. Please special note that Petitioner continued
to use the prisoner grievance procedure(s) available when he was transferred
to F.C.I. Fort Dix, and is, STILL, in the process of said procedure(s). (See
EXHIBIT "QQ" through "SS").

## VI. LEGAL CLAIMS

80. Petitioner re-alleges, re-asserts, and incorporates, by reference, the
afore-referenced Paragraphs 1., through 79.

81. Petitioner has no plain, adequate, or complete remedy at law to
redress all of the wrongs, as are described, HEREIN. Petitioner has been, and
will continue, to be irreparably injured by the conduct of Respondents unless
this Court GRANTS Petitioner the declaratory, punitive, and monetary
RELIEF(S), which Petitioner earnestly seeks.

## VII. PRAYER FOR RELIEF

82. WHEREFORE, Petitioner respectfully prays that this august Court ENTER
JUDGMENT GRANTING Petitioner:

A declaration that the acts, and omissions, as are described, HEREIN, violated Petitioner's rights, under the Constitution, and laws, of the United States;

Compensatory damages in the amount of **$7,500,000.00** (seven million five hundred thousand dollars) against each Respondent, both jointly, and severally;

Punitive damages in the amount of $500,000.00 (five hundred thousand dollars) against each Respondent, both jointly, and severally; and

Any, and all, additional, and necessary, RELIEF this Court deems just, proper, and equitable.

Respectfully submitted, and executed, at F.C.I. Fort Dix, Fort Dix, New Jersey, Burlington County, on this 15th day of November, 2016.

MATTHEW J. BLACKSTONE

Register No. 16980-084
F.C.I. Fort Dix
P.O. Box 2000
Joint Base MDL, N.J. 08640-5433

## VIII. <u>VERIFICATION</u>

I, MATTHEW J. BLACKSTONE, have read the foregoing COMPLAINT, and, HEREBY, VERIFY that the matter(s) alleged, and asserted, on information, and belief, and, as to those, I believe them to be true. I CERTIFY, under penalty of perjury, that the foregoing is true, and accurate, and affix my signature on this 15th day of November, 2016.

MATTHEW J. BLACKSTONE

## <u>CERTIFICATE OF SERVICE</u>

I, MATTHEW J. BLACKSTONE, Petitioner, HEREBY, CERTIFY, under penalty of perjury, that, on this 15th day of November, 2016, I mailed a true, and accurate copy of the within instant BIVENS V. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS, via the U.S. Post Office, first class mail, postage pre-paid, pursuant to HOUSTON V. LACK, 487 U.S. 266 (1988), the "Mailbox Rule", to the following parties:

David E. Ortiz, Warden          Bart Masters, Warden
F.C.I. Fort Dix                 F.C.I. McDowell
Federal Bureau of Prisons       Federal Bureau of Prisons
P.O. Box 38                     101 Federal Drive
Joint Base MDL, N.J. 08640-5433 Welch, W.V. 24801

MATTHEW J. BLACKSTONE