UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| MATTHEW J. BLACKSTONE, | Civ. No. 16-8600 (RBK) (JS) |
|---|---|
| Plaintiff, | |
| v. | |
| WARDEN DAVID ORTIZ, et al., | OPINION |
| Defendants. | |

**ROBERT B. KUGLER, U.S.D.J.**

### I. INTRODUCTION

Plaintiff, Matthew J. Blackstone, is a federal prisoner currently incarcerated at FCI Fort Dix, New Jersey. Plaintiff was previously incarcerated at FCI McDowell in Welch, West Virginia. He is proceeding *pro se* with a civil complaint filed pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). At this time, this Court must screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the reasons set forth below, Plaintiff's claims against the FCI McDowell Defendants will be severed and transferred to the United States District Court for the Southern District of West Virginia. Plaintiff's remaining claims against the FCI Fort Dix Defendants will be dismissed without prejudice for failure to state a claim.

### II. FACTUAL BACKGROUND

The allegations of the complaint will be construed as true for purposes of this screening opinion. Plaintiff names the following individuals as defendants: (1) David Ortiz, Warden at FCI Fort Dix; (2) Ashley Stark, PA-C, Health Services, FCI McDowell; (3) Sherri Lilly, PA-C, Health

1

Services, FCI McDowell; (4) Ms. Smith, Associate Warden, FCI McDowell; (5) Kelly Lucas, Health Services Administrator, FCI McDowell; (6) Dr. Isaac Alexis, Clinical Director, FCI McDowell; (7) Bart Masters, Warden, FCI McDowell; (8) Mr. Collins, Associate Warden, Operations, FCI McDowell; (9) C. Eichenlaub, Mid-Atlantic Regional Director, Federal Bureau of Prisons ("BOP"); (10) Ian Connors, National Inmate Appeals Administrator, Central Office, BOP; (11) William Goode, PA-C, FCI McDowell; (12) Dr. Jorge Vazquez-Velazquez, Acting Clinical Director, FCI McDowell; (13) Chandra Carothers, PA-C, FCI McDowell; (14) Dr. Pradip Patel, FCI Fort Dix; (15) Dr. Michael S. Cohen, St. Francis Medical Center; (16) R. Newbury, R.N., FCI Fort Dix; (17) Dr. S. Doneputi, FCI Fort Dix; (18) Rolando Newland, Clinical Director, FCI Fort Dix; (19) Ja'Nay Shelton, PA-C, FCI Fort Dix; (20) Dr. Louis G. Fares, F.A.C.S., FCI Fort Dix; (21) Steven Esposito, MLP, FCI Fort Dix; (22) N. West, R.N., FCI Fort Dix; (23) Vicente Elias, MLP, FCI Fort Dix; (24) Phillip Wawrzyniak, NREMT-P, FCI Fort Dix; (25) Dr. Nicoletta Turner-Foster, FCI Fort Dix; (26) Dr. Jeffrey Steinig, FCI Fort Dix; and (27) John Doe(s).

Plaintiff's complaint arises from the medical treatment he received for his umbilical hernia while incarcerated at FCI McDowell and FCI Fort Dix. (*See* ECF No. 1 at p. 4). Plaintiff claims that his medical condition began in December 2013, while he was incarcerated at FCI McDowell. (*See id.*). Plaintiff states that the Medical Health Services Department ("Medical Services") first diagnosed him with an umbilical hernia on February 4, 2014. (*See id.*). On July 7, 2014, physician assistant Sherri Lilly evaluated Plaintiff and ordered a request for an outside consultation for Plaintiff's hernia. (*See id.* at pp. 4-5).

On July 23, 2014, Plaintiff completed an inmate request form directed to Associate Warden Smith wherein he requested the status of his hernia consultation. (*See id.* at p. 5). In response to Plaintiff's request, Associate Warden Smith responded that "a consult (consultation) was submitted for [his] hernia to be reviewed at the Utilization Review Committee. If approved this

will have to go to the Region (Mid-Atlantic Regional Office) for approval." (*See id.*). On July 31, 2014, Plaintiff received correspondence from the Utilization Review Committee advising that his case had been "tabled at this time" and that he would be scheduled for additional in-house tests and evaluations, which would be presented to the Utilization Review Committee at a later date. (*See id.*).

On August 28, 2014, Ashley Stark, a physician assistant, evaluated Plaintiff and noted that his abdominal inspection was within normal limits. (*See id.* at p. 6). Following this examination, Plaintiff sent e-mail correspondence through the TRULINKS computer system to Dr. Isaac Alexis on September 29, 2014, Associate Warden Collins on October 3, 2014, and Warden Bart Masters on October 17, 2014, documenting his pain and requesting assistance. (*See id.*). On October 31, 2014, Plaintiff was evaluated by physician assistant William Goode, who failed to include specific observations regarding Plaintiff's hernia in his medical records. (*See id.* at p. 7).

On October 31, 2014, Plaintiff received correspondence from the Utilization Review Committee approving Plaintiff to undergo additional diagnostic testing and evaluation by an outside urologist. (*See id.* at pp. 7-8). On November 5, 2014, Plaintiff received an e-mail from Warden Masters stating that on October 31, 2014 "All [Plaintiff's] vital signs were within normal limits. Due to [his] recurring abdominal pain, new labs (lab tests) were ordered and a consult (consultation) for a urologist was written." (*See id*. at pp. 6-7).

On December 15, 2014, Plaintiff was treated by physician assistant Chandra Carothers, who failed to address Plaintiff's complaints of hernia and shoulder pain. (*See id.* at p. 8). Thereafter, Plaintiff made two requests for preventative healthcare visits, complaining of pain in his feet, legs, and hernia. (*See id.*). On January 7, 2015, Plaintiff underwent a preventative healthcare visit with Ms. Carothers and was issued an abdominal binder for his umbilical hernia and arch supports for his feet. (*See id.* at p. 9). Additionally, Ms. Carothers noted that Plaintiff's

3

rheumatoid factor results came back as negative. (*See id.*). On January 13, 2015, Plaintiff had a second preventive healthcare visit, wherein Ms. Carothers noted that she was requesting a general surgery consultation for Plaintiff's hernia. (*See id.* at pp. 9-10).

On January 21, 2015, Plaintiff requested and received an update from Medical Services advising that his urology and orthopedic consultations were pending scheduling and that his general surgery consultation was disapproved. (*See id.* at p. 10). On March 24, 2015, Plaintiff submitted a sick call request to Medical Services complaining of pain in his shoulder, calves, knees, legs, feet, prostate, and hernia. (*See id.* at pp. 10-11). On May 20, 2015, Plaintiff completed an inmate request form stating that he went to the urologist but was advised that he was sent to the wrong doctor and inquiring what was being done about his medical conditions. (*See id.* at p. 11).

In mid-June 2015, Plaintiff was transferred from FCI McDowell to FCI Fort Dix. (*See id.*). On July 2, 2015, Plaintiff had an initial evaluation at FCI Fort Dix by Dr. Pradip Patel, who diagnosed Plaintiff as having a mild umbilical hernia. (*See id.* at pp. 11-12). On September 17, 2015, Plaintiff was taken to St. Francis Medical Center for a consultation. (*See id.* at p. 12). There, Dr. Michael Cohen recommended surgery for Plaintiff's umbilical hernia. (*See id.*). On December 22, 2015, Plaintiff underwent a surgical consultation for his umbilical hernia with Dr. Louis G. Fares. (*See id.* at p. 14). On March 8, 2016, Plaintiff completed an inmate request form requesting his ultrasound and x-ray results and inquiring about the status of his hernia surgery. (*See id.* at p. 15). Nearly eight months after his consultation, Plaintiff underwent umbilical hernia surgery on August 8, 2016. (*See id.* at p. 17).

Plaintiff now raises Eighth Amendment deliberate indifference claims against the individual Defendants, alleging that the Defendants knew of Plaintiff's serious medical need and failed to reasonably respond. (*See id.* at p. 19). Plaintiff also asserts a state law claim for intentional infliction of emotional distress. (*See id.* at p. 18).

### III. STANDARD OF REVIEW

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a complaint, the court must be mindful to construe it liberally in favor of the plaintiff. *See United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). The court should "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

### IV. DISCUSSION

#### A. Claims against the FCI McDowell Defendants

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal for lack of personal jurisdiction. "The federal district courts in New Jersey may assert personal jurisdiction over a nonresident only to the extent authorized by state law." *Boyd v. Arizona*, 469 F. App'x 92, 97 (3d Cir. 2012) (citing *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010)); *see also* Fed. R. Civ. P. 4(e), 4(k)(1)(A). The New Jersey statute is "intended to

extend as far as is constitutionally permissible." *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280 (3d Cir. 1981); *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) ("New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution."). Accordingly, the exercise of personal jurisdiction over a nonresident defendant depends upon whether that defendant has established "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Miller Yacht Sales*, 384 F.3d at 96 ("[P]arties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there.")

There are two types of personal jurisdiction that can be established by minimum contacts which comport with constitutional due process principles: general jurisdiction and specific jurisdiction. *See Boyd*, 469 F. App'x at 97. General jurisdiction exists "when a defendant has maintained systematic and continuous contacts with the forum state." *Id.* (quoting *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008)). "Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Kehm Oil Co.*, 537 F.3d at 300 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)).

Here, Plaintiff seeks to assert Eighth Amendment and state law claims against numerous individuals for conduct that occurred while he was incarcerated at FCI McDowell in West Virginia. Specifically, Plaintiff names Ashley Stark, Sherri Lilly, Associate Warden Smith, Kelly Lucas, Dr. Isaac Alexis, Warden Masters, Associate Warden Collins, William Goode, Dr. Jorge Vazquez-Velazquez, and Chandra Carothers as Defendants (collectively the "McDowell Defendants"). Plaintiff's allegations regarding the McDowell Defendants all relate to conduct which occurred outside the territorial jurisdiction of the United States District Court for the District of New Jersey.

Plaintiff does not allege that the McDowell Defendants provided any treatment, or failed to provide treatment, in New Jersey, or that these Defendants directed their conduct at New Jersey. Moreover, Plaintiff has not asserted any facts which suggest that any of the McDowell Defendants maintained the sort of "systematic and continuous contacts" with New Jersey that would establish general jurisdiction. There is nothing in the complaint which suggests that this Court could exercise general or specific jurisdiction over the McDowell Defendants. Accordingly, personal jurisdiction does not exist as to the McDowell Defendants.

Pursuant to 28 U.S.C. § 1406(a), a district court is permitted to either dismiss or transfer a case to another court even if it does not have jurisdiction. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) (establishing that the language of § 1406 is broad enough to authorize the transfer of cases where the plaintiff has filed in a court that does not have jurisdiction over the defendant); *Lafferty v. St. Riel*, 495 F.3d 72, 77-78 (3d Cir. 2007) (stating that § 1406(a) comes into play when plaintiffs have filed in an improper forum and district courts are required to either dismiss or transfer the case).[1]

---

[1] Some courts also use 28 U.S.C. § 1631 as a source for effecting a transfer. This statute provides, in relevant part, that when a district court finds that there is a "want of jurisdiction,"

> the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. However, because courts are divided as to whether this section permits transfer to cure a lack of personal jurisdiction, this Court determines that the appropriate statue for effectuating a possible transfer in this case — where personal jurisdiction is lacking — is § 1406(a). *See* 15 Charles Alan Wright, et al., Federal Practice and Procedure § 3842 (4th ed. 2015) ("Although the courts are rather evenly divided on the subject, the better view is that Section 1631 is limited to subject matter jurisdiction defects and does not address problems with personal jurisdiction or venue.").

Section 1406(a) provides in pertinent part:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). In light of the lack of personal jurisdiction over the McDowell Defendants, this Court determines that venue in this district is improper. However, personal jurisdiction does exist, and venue is proper in this district, as to the remaining Defendants.

In a situation where venue is proper for some defendants but not for others, a district court has the option to dismiss or to sever the claims, retaining jurisdiction over some defendants and transferring the case as to the other defendants to an appropriate district. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994); 15 Charles Alan Wright, et al., Federal Practice and Procedure § 3827 (4th ed. 2015) ("If venue is proper for some defendants but improper for others, the district court has wide discretion. It may transfer the entire case to another forum that would be proper for all the defendants. Or it may retain the case as to those defendants who have been properly sued there and sever and transfer the portion of the case for those defendants for whom venue is improper or dismiss the action as to those defendants.").

Here, Plaintiff has filed claims against numerous individual Defendants for alleged violations which occurred at FCI McDowell in West Virginia and FCI Fort Dix in New Jersey. Because it appears that this action was filed in good faith, it would be in the interest of justice to sever and transfer the claims against the McDowell Defendants to the appropriate venue.

### B. Eighth Amendment Claims against the FCI Fort Dix Defendants

In *Bivens*, the Supreme Court created a federal counterpart to the remedy created in 42 U.S.C. § 1983. *See Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004). The Supreme Court recently held that when a party seeks to assert an implied cause of action under the Constitution,

8

courts must not extend *Bivens* to a new context[2] if there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017) (citation omitted). "If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, courts must refrain from creating the remedy." *Id.* at 1858. An alternative remedial structure may also limit the Judiciary's power to infer a new *Bivens* cause of action. *Id.*

First, courts must determine whether a claim arises in a new *Bivens* context, and the context is new if the case is different in a meaningful way from the previous *Bivens* cases decided by the Supreme Court. *Id.* at 1859. Meaningful differences may include,

> the rank of the officers involved; the constitutional right at issue; the extent of judicial guidance for the official conduct; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

Second, courts must conduct the special factors analysis to determine whether Congress, not the courts, should decide whether a damages action should be allowed. *Id.* at 1857. For example, a *Bivens* action is not a proper vehicle for altering high-level executive policy. *Id.* at 1860. Third, courts must consider whether there were other alternative forms of judicial relief available, including injunctions and habeas petitions. *Id.* at 1849; *see also Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017) (discussing analysis under *Ziglar*). However, "[d]isposing

---

[2] There have only been instances in which the Supreme Court has found an implied cause of action for a Constitutional violation by agents of the Federal Government: *Bivens*, 403 U.S. 388 (Fourth Amendment unlawful search and seizure); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment gender discrimination); and *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment claim of inadequate medical care in prison).

of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy—is appropriate in many cases." *Hernandez v. Mesa*, 137 S.Ct. 2003, 2007 (2017).

Plaintiff brings individual capacity *Bivens* claims against various medical providers at FCI Fort Dix (the "Fort Dix Defendants") for inadequate medical care in violation of the Eighth Amendment. The Court notes this is not a new *Bivens* context under *Ziglar*. The Supreme Court has recognized an implied cause of action for Eighth Amendment inadequate medical care claims against a federal actor who is personally involved in the deprivation. *Carlson v. Green*, 446 U.S. 14, 19 (1980).

At the outset, the Court finds that Plaintiff fails to allege facts showing how many of the individual Fort Dix Defendants were involved in the alleged violations of his constitutional rights. To state a claim under the Eighth Amendment's proscription against cruel and unusual punishment, a plaintiff must assert that each defendant had personal involvement in the alleged wrongs, and liability cannot be predicated solely on the operation of *respondeat superior*. *See Rizzo v. Goode*, 423 U.S. 362, 373-74 (1976); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). After reviewing Plaintiff's complaint, the Court finds that Plaintiff alleges no facts indicating any personal involvement on the part of Defendants David Ortiz, C. Eichenlaub, Ian Connors, Rolando Newland, Phillip Wawrzyniak, Dr. Nicoletta Turner-Foster, and Dr. Jeffrey Steinig.[3] As such, Plaintiff's claims are dismissed without prejudice as to these Defendants.

Plaintiff also fails to sufficiently allege claims of direct liability against the remaining individual Fort Dix Defendants. To state a direct claim under the Eighth Amendment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "A medical

---

[3] Plaintiff identifies David Ortiz as the warden at FCI Fort Dix, however, *respondeat superior* is not a basis for liability under § 1983 and *Bivens*.

need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

"To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). For instance, a plaintiff may make this showing by establishing that the defendants "intentionally den[ied] or delay[ed] medical care." *Giles*, 571 F.3d at 330. The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.

Notably, however, allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001). Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

It is well-settled that a claim of deliberate indifference cannot be made where a significant level of care has been provided, and all that is alleged is that the prisoner disagrees with the

professional judgment of a physician, or that a different physician has, in the past, taken a different approach to the prisoner's treatment. *See Estelle*, 429 U.S. at 105-06, 107 (finding that "in the medical context, ... a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (recognizing "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference'"); *Taylor v. Norris*, 36 F. App'x. 228, 229 (8th Cir. 2002) (finding that deliberate indifference claim failed because it involved a disagreement over recommended treatment for a hernia and the decision not to schedule a doctor's appointment).

Here, Plaintiff alleges that the Fort Dix Defendants' "indifferent, incompetent, unprofessional, and, as well as, total[ly] unaccountable behavior" caused Plaintiff unnecessary pain and suffering in violation of the Eighth Amendment. (*See* ECF No. 1 at p. 17). Throughout his complaint, Plaintiff repeatedly characterizes the Fort Dix Defendants' conduct as lazy, incompetent, unprofessional, and malpractice. (*See id.* at pp. 7, 9, 10, 16, 17). Plaintiff has not pled sufficient facts to suggest that any of the Fort Dix Defendants intentionally denied, delayed, or interfered with the administration of his medical treatment. Rather, Plaintiff disputes the adequacy of the treatment he received in connection with his hernia. At most, the facts surrounding the treatment of Plaintiff's hernia condition amount only to potential medical malpractice, which is insufficient to state a cognizable deliberate indifference to a serious medical need claim under the Eighth Amendment.[4] *See Bramson v. Sulayman*, 251 F. App'x 84, 86 (3d Cir. 2007)

---

[4] Because Plaintiff has not sued the United States and does not mention the Federal Tort Claims Act ("FTCA"), this Court does not construe the complaint as raising a medical malpractice claim under the FTCA.

("[Plaintiff's] complaint makes clear that the defendants treated him on many occasions. He claims those treatments proved ineffective and that defendants negligently failed to diagnose his heart condition, but those allegations do not state an Eighth Amendment claim.") (citations omitted).

Plaintiff also fails to state a claim of deliberate indifference against the Fort Dix Defendants arising from the eight-month delay that occurred between Plaintiff's evaluation for hernia surgery and the date the surgery was performed. Plaintiff presents no factual allegations to demonstrate that the eight-month delay was due to non-medical reasons, or that the named Fort Dix Defendants were culpable for the delay. "[A]n allegation of a delay in a surgical procedure alone, does not rise to the level of deliberate indifference." *Zilich v. Doll*, No. 13-2814, 2015 WL 9690311, at *6 (M.D. Pa. Dec. 4, 2015) (finding that nine-month delay in performance of heart surgery was insufficient to state an Eighth Amendment claim); *see also Casilla v. N.J. State Prison*, No. 05-4590, 2009 WL 2148012, at *6 (July 16, 2009) (holding that twelve-month delay between recommendation for knee surgery and performance of surgery did not amount to deliberate indifference); *Dixon v. Rose,* No. 90-4889, 1990 WL 121220 (E.D. Pa. Aug. 14, 1990) ("A delay in providing a prisoner dental treatment, standing alone, does not constitute an eighth amendment violation."); *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993) (finding that inmate's mere disagreement with doctor's decision to delay surgery did not establish Eighth Amendment claim). Plaintiff fails to allege any conduct by the Fort Dix Defendants suggesting that they were deliberately indifferent to his serious medical needs. As such, Plaintiff's claims are dismissed without prejudice as to Defendants Dr. Pradip Patel, Dr. Michael S. Cohen, R. Newbury, Dr. S. Doneputi, Ja'Nay Shelton, Dr. Louis Fares, Steven Esposito, N. West, and Vincente Elias.

### C. State Law Claims against New Jersey Defendants

Although the complaint fails to state a federal claim, Plaintiff also raises a state law claim for intentional infliction of emotional distress against the Fort Dix Defendants. Because the Court

has dismissed the federal claims, the remaining potential basis for this Court's jurisdiction over Plaintiff's state law claim is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dep't of Corrs. v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1284-85 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *See United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85. Here, the Court has dismissed the federal claims without prejudice at the earliest possible stage of the proceedings and exercises its discretion to decline supplemental jurisdiction over Plaintiff's state law claim at this time.

V. **CONCLUSION**

For the reasons set forth above, Plaintiff's Eight Amendment and state law claims against the FCI McDowell Defendants will be severed and transferred to the Southern District of West Virginia. Additionally, Plaintiff's Eight Amendment and state law claims against the FCI Fort Dix

14

Defendants will be dismissed without prejudice. Plaintiff shall have thirty days to submit an Amended Complaint to cure the deficiencies noted herein.

An appropriate Order will be entered.


Dated: May 7, 2018                                          s/Robert B. Kugler
                                                                             ROBERT B. KUGLER
                                                                             United States District Judge