IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

MATTHEW J. BLACKSTONE,                    )
                                          )
            Plaintiff,                    )
v.                                        )        Civil Action No. 1:18-00910
                                          )
ASHLEY STARK, *et al.*,                   )
                                          )
            Defendants.                   )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Defendants Stark, Lilly, Lucas, Alexis, Collins, Goode, Vazquez-Valazquez, and Carothers' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 77), filed on May 14, 2019; and (2) Defendant Smith's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 81), filed on May 31, 2019. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document Nos. 79 and 82.) Plaintiff filed his Response in Opposition on December 2, 2019. (Document No. 93.) Having examined the record and considered the applicable law, the undersigned has concluded that the Defendants' above Motions should be granted.

## PROCEDURAL HISTORY

On November 17, 2016, Plaintiff, acting *pro se*, filed in the United States District Court for the District of New Jersey his Complaint seeking relief for alleged violations of his

constitutional rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 1.) Specifically, Plaintiff alleges that Defendants acted with deliberate indifference in providing medical treatment for his abdominal pain, hernia, and pain in his shoulder, knees, feet, and legs. (<u>Id.</u>) By Memorandum Opinion and Order entered on May 9, 2018, the District of New Jersey severed and transferred to this Court Plaintiff's claims against Defendants Ashley Stark, Sherri Lilly, Associate Warden Smith, Kelly Lucas, Dr. Isaac Alexis, Warden Masters, Associate Warden Collins, William Goode, Dr. Jorge Vazquez-Velazquez, and Chandra Carothers. (Document Nos. 13 and 14.) By Order entered on May 16, 2018, the undersigned directed Plaintiff to either (1) pay the Court's filing fee ($350) and administrative fee ($50) totaling $400, or (2) file an Application to Proceed Without Prepayment of Fees or Costs. (Document No. 17.) On June 14, 2018, Plaintiff filed his Application to Proceed Without Prepayment of Fees or Costs.[1] (Document No. 18.) By Order also entered on August 17, 2018, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 19.) The Clerk issued process on the same day. (Document No. 20.)

On May 14, 2019, the Defendants Stark, Lilly, Lucas, Alexis, Collins, Goode, Vazquez-Velazquez, and Carothers filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 77 and 78.) Defendants argue that Plaintiff's claim should be dismissed based on the following: (1) Defendant Collins has not been served (Document No. 78, pp. 9 – 11.); (2) Plaintiff's challenge to the medical treatment

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

provided by Defendants Lilly and Goode is barred by the statute of limitations (Id., pp. 11 – 13.); (3) "Defendant Lucas is a United States Public Health Service Employee entitled to absolute immunity" (Id., p. 13.); (4) "Plaintiff cannot establish an Eighth Amendment violation" (Id., pp. 14 – 18.); and (5) "Defendants are entitled to qualified immunity" (Id., pp. 19 – 20.). As Exhibits, Defendants attach the following: (1) The Declaration of Ashley Copolo (Document No. 77-1, pp. 2 – 6.); and (2) A copy of Plaintiff's pertinent medical records (Id., pp. 6 – 275.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 15, 2019, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 79.)

On May 31, 2019, Defendant Smith filed his "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment Regarding Plaintiff's Complaint as to this Individual Defendant." (Document No. 81.) Defendant Smith argues that Plaintiff's claim should be dismissed because "there are no allegations contained in Plaintiff's Complaint setting forth any alleged tortious activity conduct by or participated in by Defendant Smith." (Id.) Defendant Smith further states that he "incorporates by reference all applicable arguments and law set forth in 'Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment' (Doc. 77) and Defendants' Memorandum of Law in Support of Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 78) filed on or about May 14, 2019." (Id., 2, fn. 2.) As Exhibits, Defendant Smith attaches the following: (1) The Declaration of Reggie Smith (Document No. 81-1.); (2) A copy of the job description of a Purchasing Assistant (Document No. 81-2.); (3) A copy of the job description for an Administrative Services Assistant 1 (Document No. 81-3.); and (4) A copy of the job description for an Administrative Services Assistant 3 (Document No. 81-4.)

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 3, 2019, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 82.)

On December 2, 2019, Plaintiff filed his Response in Opposition to Defendants' Motions. (Document No. 93.) As Exhibits, Plaintiff attaches the following: (1) A copy of his pertinent medical records (Document No. 93-1, pp. 1, 3, 6 – 10, 14.); (2) A copy of Administrator Ian Conners' Response to Administrative Remedy No. 793703-A2 dated September 7, 2016 (<u>Id.</u>, p. 2.); (3) A copy of Plaintiff's "Inmate Request to Staff" dated July 23, 2014 (<u>Id.</u>, p. 4.); (4) A copy of Warden Master's Response to Plaintiff's Administrative Remedy Request (Remedy ID No. 793703-F1) dated September 26, 2014 (<u>Id.</u>, p. 5.); (5) A copy of Plaintiff's "Inmate Request to Staff" dated December 29, 2014 (<u>Id.</u>, pp. 11 - 12.); (6) A copy of page one of the Declaration of Ashley Copolo (<u>Id.</u>, p. 13.); (7) A copy of Plaintiff's "Inmate Request to Staff" dated May 20, 2015 (<u>Id.</u>, p. 15.); (8) A copy of Plaintiff's "Sick Call Request" dated March 24, 2015 (<u>Id.</u>, p. 16.); and (8) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated October 9, 2014 (<u>Id.</u>, pp. 17 - 18.).

## **FACTUAL HISTORY**

Plaintiff was incarcerated at FCI McDowell from December 12, 2013 to June 19, 2015. (Document No. 77-1, p. 2.) An intake medical exam was conducted on December 12, 2013, by Registered Nurse ["RN"] Nicole Dufour. (<u>Id.</u>, pp. 27 - 31.) On December 16, 2013, Physician Assistant ["PA"] Ashley Stark took Plaintiff's history and conducted a physical. (<u>Id.</u>, pp. 32 – 44.) Plaintiff denied any painful conditions. (<u>Id.</u>) PA Stark ordered lab work and instructed Plaintiff on how to obtain medical, dental, and mental health care. (<u>Id.</u>, pp. 32 – 44, and 84 - 86.) On February

4

4, 2014, Plaintiff reported to sick call complaining of foot pain, a "lump in his belly button," and urinary problems. (Id., pp. 23 - 26.) Plaintiff described his heel pain as dull/achy and having sharp shooting pains in the balls of his feet. (Id.) Plaintiff explained that he had worn arch supports for the past 26 years. (Id.) Plaintiff reported his urinary problems as needing to urinate at least six times at night, feeling of incomplete emptying of bladder, and decreased pressure in the stream of urine. (Id.) Plaintiff also requested a new pair of glasses. (Id.) PA Stark conducted a physical examination of Plaintiff, including a prostate examine. (Id.) PA Stark ordered x-rays of Plaintiff's feet, lab work (blood, urine, and fecal occult blood cards), and submitted a consultation request for Plaintiff to been seen in optometry. (Id.) Plaintiff was directed to follow-up at sick call as needed. (Id.) On February 7, 2014, x-rays of Plaintiff's feet were conducted revealing negative findings except for mild degenerative joint disease. (Id., p. 79.)

On March 6, 2014, Plaintiff reported to sick call complaining of "urinating about 6 times a night and decreased flow in stream." (Id., pp. 21 - 22.) Plaintiff was evaluated by PA Sherri Lilly, who diagnosed Plaintiff with benign prostatic hyperplasia ["BPH"]. (Id.) PA Lilly counseled Plaintiff that BPH was a common, noncancerous enlargement of the prostate gland which results in the compression of the urinary tube impeding the flow of urine from the bladder. (Id.) PA Lilly prescribed Doxazosin tablets and instructed Plaintiff to return to sick call as needed. (Id.) Plaintiff was issued medical shoes on March 24, 2014. (Id., p. 58.) On April 28, 2014, Plaintiff underwent an optometry evaluation. (Id., pp. 18 – 20.) On May 5, 6, and 8, 2014, Plaintiff's fecal occult blood tests were noted as negative. (Id., p. 49.)

On July 7, 2014, Plaintiff reported to sick call for a follow up on his BPH symptoms. (Id., pp. 15 - 17.) Plaintiff reported that his frequent urination and decreased stream had improved with the medication. (Id.) Plaintiff further complained of multiple joint pain since March 2014. (Id.)

Specifically, Plaintiff reported joint pain in bilateral knees, hips, shoulders, and upper arms. (Id.) Plaintiff stated that he "hurts when he first gets out of bed and then joint pain improves as the day progresses." (Id.) Finally, Plaintiff stated that he had a hernia he would like to be checked. (Id.) Plaintiff was examined by PA Lilly, who noted a ventral hernia that was tender to palpation. (Id.) PA Lilly reviewed Plaintiff's lab work and noted that Plaintiff reported a family history of diabetes. (Id.) PA Lilly ordered additional labs for a metabolic profile and rheumatoid factor, renewed Plaintiff's BPH prescription, and submitted a consultation request for Plaintiff to be evaluated by a gastroenterologist concerning his hernia. (Id.) Plaintiff was instructed to return to Health Services immediately if his conditions worsened. (Id.) Plaintiff's lab tests were performed on July 14, 2014. (Id., pp. 73 – 75.)

On July 23, 2014, Plaintiff submitted an "Inmate Request to Staff" requesting the return of his $6.00 co-pay. (Id., pp. 70 - 71.) Plaintiff stated that medical had requested approval for "hernia operation," but complained that medical had nothing else to help with his "pain and discomfort." (Id.) Specifically, Plaintiff complained that even though Dr. Mato and PA Lilly were aware of Plaintiff's "pain and discomfort," neither had prescribed medication nor instructed him what to do to avoid aggravating the hernia. (Id.) Health Services Administrator K. Lucas responded on August 11, 2014, noting that a consult for an evaluation by an "outside" gastroenterologist had been submitted and it would be reviewed at the Utilization Review Committee ["URC"]. (Id.) It was further explained that if the URC approved the request, the request would then need to be approved by the regional office. (Id.) Health Services Administrator Lucas noted that a review of Plaintiff's commissary sales revealed no purchases for pain medication. (Id.) Health Services Administrator Lucas advised Plaintiff to purchase over-the-counter pain medication from the commissary and to report to sick call if his condition worsened. (Id.) On July 31, 2014, the URC considered the

6

consultation request for a referral to an "outside" gastroenterologist. (Id., p. 72.) The URC determined that the consultation request would be tabled at that time. (Id.) A decision to table a referral indicates that the inmate "will be scheduled for an additional test and/or evaluation and/or repeat evaluation in-house." (Id.) The request will then be presented to the URC at a later date. (Id.)

On August 28, 2014, Plaintiff reported to sick call complaining of lower abdominal pain. (Document No. 77-1, pp. 12 - 14.) Plaintiff stated that "the pain started last night and continually got worse" and "he can no longer walk because of the pain." (Id.) Plaintiff's lab work was reviewed and he was examined by PA Stark, PA Goode, and Dr. Alexis. (Id.) It was noted that Plaintiff had abdominal tenderness with palpation, but normal active bowel sounds, no guarding, no rigidity, no epigastric mass, and no suprapubic mass. (Id.) An x-ray of Plaintiff's abdomen was conducted, which revealed negative results. (Id., pp. 12 – 14, and 68.) Plaintiff was instructed to increase fluid intake and rest. (Id.) On September 3, 2014, a urine test was conduct and revealed normal results. (Id., p. 66.)

On October 31, 2014, Plaintiff was evaluated by PA Goode concerning his complains of suprapubic abdominal pain on and off for one month. (Id., pp. 9 - 11.) Plaintiff reported that the pain had worsened over the past week. (Id.) Plaintiff stated he had persistent painless hematuria (blood in urine) for the last ten months. (Id.) Plaintiff, however, denied painful or difficult urination, urgency, or urinary frequency. (Id.) PA Goode examined Plaintiff noting suprapubic tenderness with palpation, but no guarding, no rigidity, no masses, no hepatomegaly, no splenomegaly. (Id.) PA Goode ordered lab tests including a CBC w/diff, comprehensive metabolic profile, lipid profile, urinalysis, CRP, E-ESR. (Id.) PA Goode submitted a consultation request for referral to an "outside" urologist with cystoscopy. (Id.) The URC considered and approved the

7

consultation request the same day. (Id., p. 61 and Document No. 1-2, p. 36.) Plaintiff's labs were performed on November 3, 2014. (Document No. 77-1, pp. 271-73.)

On December 15, 2014, Plaintiff was evaluated by PA Chandra Carothers concerning his complaints of right shoulder pain, knee pain, and ankle pain. (Id., pp. 165-67.) Plaintiff reported experiencing right shoulder pain for approximately ten months and stated it had progressively got worse to the point he cannot passively move it above shoulder height. (Id.) Plaintiff denied any injury and stated he had been using aspirin without relief. (Id.) Plaintiff reported difficulty urinating, but his PSA was recently normal. (Id.) Plaintiff's chart revealed a recent digital rectal exam. (Id.) Plaintiff acknowledged that the prescribed medication helped his condition, but stated the medication did not fully cure the problem. (Id.) PA Carothers noted that Plaintiff was not taking the maximum does of the medication for his BPH, so she increased his prescription for Doxazosin to 8 mg daily. (Id.) PA Carothers examined Plaintiff noting a decreased range of active and passive motion in his right shoulder. (Id.) PA Carothers ordered an x-ray of Plaintiff's shoulder, ordered labs for rheumatoid factor, and provided a commissary slip for ibuprofen. (Id.) On December 18, 2014, Plaintiff's fecal occult blood tests were noted as negative. (Id., p. 49.) On December 19, 2014, the x-ray of Plaintiff's right shoulder was performed revealing negative results with no evidence of orthopedic hardware failure. (Id., p. 269.)

On December 29, 2014, Plaintiff submitted an "Inmate Request to Staff" complaining of pain in his feet, ankles, knees, legs, and right shoulder. (Document No. 93-1, pp. 11 - 12.) Plaintiff further complained that he had an enlarged prostate and hernia that was causing him "extreme pain, discomfort, lack of sleep, and the inability to exercise." (Id.) Plaintiff requested his lab results and to have a preventive health care visit. (Id.) Plaintiff further requested that his above conditions be "evaluated and treated appropriately." (Id.) PA Carothers responded on December 29, 2014,

8

that Plaintiff will be placed on call out. (Id.) On January 7, 2015, Plaintiff reported to Health Service for a preventive health visit. (Document No. 77-1, pp. 156-63.) Plaintiff reported pain in the arches of his feet and being unable to move his right arm above his shoulder. (Id.) Plaintiff further stated that he "just hurts all over." (Id.) PA Carothers noted that Plaintiff was recently tested for rheumatoid arthritis factor and the results were negative. (Id., 156 and 267.) Upon examination, PA Carothers noted that Plaintiff was unable to actively or passively move his right arm above shoulder height. (Id., pp. 156-63) PA Carothers further noted Plaintiff's umbilical hernia. (Id.) PA Carothers submitted a consult requests for referral of Plaintiff to an "outside" orthopedist for his shoulder condition. (Id.) PA Carothers noted Plaintiff had a BMI of 28 and counseled Plaintiff regarding diet and exercise. (Id.) Finally, PA Carothers provided Plaintiff with Hemoccult cards to complete, issued an abdominal binder for Plaintiff's umbilical hernia, and issued arch supports for Plaintiff's feet. (Id.) By Administrative Note entered on January 13, 2015, PA Carothers noted that Plaintiff had a previous consult for gastroenterology that needs to be for general surgery. (Id., p. 153.) PA Carothers noted that Plaintiff had a hernia. (Id.) PA Carothers noted she was cancelling the previous consult for gastroenterology and now requesting a general surgery consult. (Id.) On January 21, 2015, Plaintiff submitted an "Inmate Request to Staff" requesting the status of his referrals to a urologist, orthopedist, and hernia specialist. (Id., p. 259.) On the same day, medical staff responded that Plaintiff's referrals a urologist and orthopedist were "pending scheduling" and the general surgery consult concerning the hernia had been disapproved. (Id.)

On February 9, 2015, Plaintiff was seen by an "outside" orthopedist concerning his shoulder pain. (Id., pp. 261-64.) Plaintiff complained of shoulder pain for the last year with no known injures, but indicated he had a pin in his shoulder due to a broken clavicle in 1983. (Id.) Plaintiff reported the pain was sudden onset after playing softball on March 15, 2014. (Id.) Dr.

9

Puranik noted Plaintiff had a decreased range of motion in his shoulder and diagnosed him with a rotator cuff sprain. (Id.) Dr. Puranik administered a steroid shot in Plaintiff's shoulder and recommended that an MRI be conducted. (Id.) Dr. Puranik further recommended physical therapy and to follow-up if pain persisted. (Id.) On the same day, PA Carothers saw Plaintiff for his Medical Trip Return Encounter. (Id., pp. 145-52.) The next day, on February 10, 2015, PA Carothers submitted a consult request for the MRI as recommended by Dr. Puranik. (Id., pp. 146-47.) The MRI was performed on March 3, 2015. (Id., pp. 256-57.) The MRI report noted that the exam was compromised by the metallic internal fixation plate on the clavicle, but showed probable tendinosis without discrete tear involving both the supraspinous and subscapularis tendons with mild degenerative hypertrophy of the acromioclavicular joint without impingement on the rotator cuff. (Id.) A Medical Trip Return Encounter was performed at Health Services upon Plaintiff's return from the MRI. (Id., pp. 144-45.) Plaintiff reported no new injuries. (Id.)

On March 24, 2015, Plaintiff submitted a sick call request complaining of pain in his shoulder, legs, and feet. (Document No. 93-1, p. 16.) Next, Plaintiff stated that his prostate medication was no longer helping. (Id.) Finally, Plaintiff stated that his hernia was still causing pain and discomfort resulting in a loss of sleep and lack of exercise. (Id.) Medical staff responded the same day by notifying Plaintiff to watch call out for an upcoming appointment. (Id.) On March 26, 2015, Plaintiff reported he was hit in the face with a softball. (Id., p. 255.) It was noted that Plaintiff's eye appeared to be swollen. (Id.) On April 12, 2015, it was noted that Plaintiff injured his right forearm during a softball game. (Id.) On April 16, 2015, Plaintiff reported to medical for his sick call appointment. (Document No. 77-1, pp. 140-43.) Plaintiff complained that "he is in so much pain he cannot run, it hurts to walk, he has very limited mobility in his right shoulder, it hurts to roll over in bed or sit up in a chair." (Id., pp. 140-43.) PA Carothers noted that "after speaking

to REC staff, I received the logbook for rec injuries and [Plaintiff] has two injuries logged within the last month while playing softball." (Id.) PA Carothers noted that "one was a hit to the face by a softball two days after he filed his sick call stating all the above, and the most recent injury 5 days ago which the inmate still has a huge bruise on his right forearm." (Id.) PA Carothers noted that Plaintiff "never came to sick call or reported to medical for these injuries and did not mention them today prior to my asking about them at which time he adamantly denies playing softball even after being told he was witnessed by rec staff and has he injuries logged." (Id.) PA Carothers noted that "[a]fter a long discussion, while taking the inmate to get new compression stocking, he finally admits to playing softball." (Id.) Plaintiff further complained of stomach pain and stated that his BPH medication was not as effective as it was before. (Id.) When questioned by PA Carothers, Plaintiff admitted daily bowel movements and denied passing any blood. (Id.) PA Carothers examined Plaintiff and ordered labs and an abdomen x-ray. (Id.) PA Carothers changed Plaintiff's BPH medication to Flomax. (Id.) Plaintiff was instructed to follow-up at sick call as needed and return immediately if his condition worsened. (Id.) On April 24, 2015, Plaintiff's abdominal x-ray was conducted revealing negative results with moderate stool burden. (Id., p. 253.)

On May 12, 2015, Plaintiff had his appointment with a "outside" urologist. Plaintiff was examined, and an ultrasound of the abdomen/pelvis was recommended. A Medical Trip Return Encounter was performed the same day at Health Service and no injuries were reported. (Id., pp. 138-39.) On May 20, 2015, Plaintiff submitted an "Inmate Request to Staff" complaining that he "went to a urologist and he said I was sent to the wrong doctor."[2] (Document No. 93-1, p. 15.) On

---

[2] Plaintiff appears to argue that he was sent to the wrong doctor because he was sent to a urologist instead of a general surgeon. The record reveals, however, that the consult request for a referral to a urologist was approved whereas the consult request for referral to a general surgeon was denied. The consult request for the urologist was made regarding Plaintiff's BPH and urinary symptoms,

June 19, 2015, Plaintiff was transferred out of FCI McDowell. (Document No. 77-1, p. 6.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's

---

whereas the consult request for the general surgeon was related to Plaintiff's hernia.

claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1. **Defendants Masters and Collins:**

A prior review of the Docket Sheet in the instant case reflected that service had not been effectuated upon Defendant Masters and Collins. By Order entered on November 30, 2018, the undersigned noted that the Summonses for Defendants Masters and Collins (along with other named defendants) had been returned unexecuted and directed as follows:

> [I]t is hereby **ORDERED** that Plaintiff shall provide the Court with an updated address for . . . Associate Warden Collins, . . . Warden Bart Masters . . . by **December 31, 2018**. Failure of Plaintiff to provide the Court with an updated address for the above Defendants by December 31, 2018, will result in a recommendation of dismissal of this matter without prejudice as to the above Defendants pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia.

(Document No. 45.) On January 2, 2019, Plaintiff filed a Motion for Extension to Time regarding the foregoing. (Document No. 46.) By Order entered on January 3, 2019, the undersigned granted Plaintiff an extension of time until February 4, 2019. (Document No. 47.) On February 5, 2019, Plaintiff provided the Court with updated addresses for Defendant Masters and other named Defendants. (Document No. 48.) Plaintiff, however, requested an additional extension of time concerning Defendant Collins. (Id.) By Order entered on February 6, 2019, the undersigned directed the Clerk to reissue service for Defendant Masters based upon the information provided by Plaintiff. (Document No. 49.) The Clerk issued service the same day. (Document No. 50.) Concerning Defendant Collins, the undersigned granted Plaintiff's motion for an extension of time. (Document No. 49.) The undersigned directed that Plaintiff had until March 4, 2019, to provide the Court with an updated address for Defendant Collins. (Id.) Again, the undersigned notified Plaintiff that failure to provide the Court with an updated address for Defendant Collins by March 4, 2019, would result in a recommendation of dismissal as Defendant Collins. (Id.) Plaintiff, however, has failed to provide the Court with an updated address for Defendant Collins.

By Order entered on March 21, 2019, the undersigned noted that the Summons for Defendant Masters had been returned unexecuted and directed as follows:

> [I]t is hereby **ORDERED** that Plaintiff shall provide the Court with an updated address for Bart Masters . . . by **April 5, 2019**. Failure of Plaintiff to provide the Court with an updated address for the above Defendants by April 5, 2019, will result in a recommendation of dismissal of this matter without prejudice as to the above Defendants pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia.

(Document No. 64.) On April 8, 2019, Plaintiff provided the Court with an updated address for Defendant Masters. (Document No. 69.) By Order entered the same day, the undersigned directed

14

the Clerk to reissue service for Defendant Masters based upon the information provided by Plaintiff. (Document No. 70.) The Clerk issued process the same day. (Document No. 71.) By Order entered on May 15, 2019, the undersigned again noted that the Summons for Defendant Masters had been returned unexecuted and directed as follows:

> [I]t is hereby **ORDERED** that Plaintiff shall provide the Court with an updated address for Bart Masters . . . by **May 30, 2019**. Failure of Plaintiff to provide the Court with an updated address for the above Defendants by May 30, 2019, will result in a recommendation of dismissal of this matter without prejudice as to the above Defendants pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia.

(Document No. 80.) Plaintiff, however, has not responded to the Court's above Order.

Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia, District Courts possess the inherent power to dismiss an action for a *pro se* Plaintiff's failure to prosecute *sua sponte*.[3] See Link v. Wabash Railroad Co., 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962).

Rule 41.1 of the Local Rules provides:

> **Dismissal of Actions**. When it appears in any pending civil action that the principal issues have been adjudicated or have become moot, or that the parties have shown no interest in further prosecution, the judicial officer may give notice to all counsel and unrepresented parties that the action will be dismissed 30 days after the date of the notice unless good cause for its retention on the docket is shown. In the absence of good cause shown within that period of time, the judicial officer may dismiss the

---

[3] In its Motion, United States requested dismissal of Defendant Collins based upon the lack of service. (Document No. 77.) The United States, however, failed to address the lack of service of Defendant Masters. Rule 41(b) of the Federal Rules of Civil Procedure provides:

> **(b) Involuntary Dismissal: Effect**. If the plaintiff fails to prosecute or to comply with these rules or any order of court, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule - - except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - - operates as an adjudication on the merits.

action. The clerk shall transmit a copy of any order of dismissal to all counsel and unrepresented parties. This rule does not modify or affect provisions for dismissal of actions under FR Civ P 41 or any other authority.

Although the propriety of a dismissal "depends on the particular circumstances of the case," in determining whether to dismiss a case involuntarily for want of prosecution, the District Court should consider the following four factors:

(i) the degree of personal responsibility of the plaintiff;
(ii) the amount of prejudice caused the defendant,
(iii) the existence of a history of deliberately proceeding in a dilatory fashion, and
(iv) the existence of a sanction less drastic than dismissal.

Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989). In consideration of the first factor, the Court finds that the delays in this case are attributable solely to Plaintiff as Defendants Masters and Collins have not been required to make an appearance in this action. When a federal employee is sued in his or her individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf, the party must serve both the United States **and** the officer or employee pursuant to Rule 4(e), (f), or (g). Fed. R. Civ. P. 4(i)(3). Rule 4(e)(2) requires that an individual be served by delivery of a copy of the Summons to the individual personally, by leaving a copy at the individual's dwelling with someone of suitable age, or by serving an authorized agent. Fed. R. Civ. P. 4(e). Although service has been obtained upon the United States, the record clearly reveals that service has not been obtained upon Defendants Masters or Collins. The record further reveals that this Court has issued process multiple times in the instant case attempting to obtain service upon Defendants Masters and Collins based upon the information provided by Plaintiff. Each attempt, however, was unsuccessful. Although officers of the Court are charged with assisting the Plaintiff with service of process under 28 U.S.C. § 1915(d) due to his *in forma pauperis* status, the Court is not required to be an advocate for the *pro se* Plaintiff. The Court has

16

no responsibility to continue to search for the location of any unserved Defendant for the purpose of perfecting service of process for the Plaintiff. Skaggs v. Clark, 2015 WL 269154, * 3 (S.D.W.Va. Jan. 21, 2015); also see Ray v. Pursell, 2017 WL 3707584 (S.D.W.Va. June 23, 2017)(same). After each of the final attempts to obtain service upon Defendants Masters and Collins, the Court notified Plaintiff of the foregoing and directed Plaintiff to provide the Court with updated addresses for the above Defendants so that proper service could be effectuated.[4] (Document Nos. 49 and 80.) Plaintiff, however, has not responded to the foregoing Orders. Plaintiff, therefore, is the sole cause of the delays in this action.

With respect to the second factor, the record is void of evidence indicating that the Defendants have been prejudiced by the delays in this case. Concerning the third factor, the record indicates that Plaintiff has some history of "deliberately proceeding in a dilatory fashion" as Plaintiff has filed multiple and repetitive motions for extensions of time. In consideration of the fourth factor, the Court acknowledges that a dismissal under either Rule 41(b) or Local Rule 41.1 is a severe sanction against Plaintiff that should not be invoked lightly. The particular circumstances of this case, however, do not warrant a lesser sanction. An assessment of fines, costs, or damages against Plaintiff would be unjust in view of Plaintiff's status as a *pro se*, indigent litigant. Moreover, explicit warnings of dismissal would be ineffective in view of Plaintiff's failure to respond to the undersigned's Order entered approximately seven months ago. (Document Nos. 49 and 80.) In consideration of all factors, the undersigned concludes that dismissal for failure to prosecute is warranted. Accordingly, the undersigned recommends that this action be dismissed

---

[4] The undersigned notes that it is Plaintiff's responsibility to provide the Court with the correct address of a Defendant.

without prejudice as to Defendants Masters and Collins unless Plaintiff is able to show good cause for his failure to prosecute.

**2.    Statute of Limitations:**

In their Motion, Defendants Lilly and Goode argues that Plaintiff's claim against them is barred by the statute of limitations. (Document No. 77 and Document No. 78, pp. 11 – 13.) As to Defendant Lilly, she contends that she only provided treatment to Plaintiff on two occasions: March 6, 2014, and July 7, 2014. (Id.) As to Defendant Goode, he contends that he only provided treatment to Plaintiff on one occasion: October 31, 2014. (Id.) Defendants Lilly and Goode, therefore, argue that their medical treatment of Plaintiff occurred more than two years prior to the date Plaintiff filed his action (November 17, 2016). (Id.) Thus, Defendants Lilly and Goode request that Plaintiff's claim against them be dismissed as barred by the statute of limitations. (Id.) In his Response in Opposition, Plaintiff failed to address the foregoing argument. (Document No. 93.)

Concerning Plaintiff's Bivens claim of deliberate indifference, Plaintiff must file such action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective State's statutes of limitation. See Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 261, 85 L.Ed.2d 254 (1985)(*overruled on other grounds by*, Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004)). Under West Virginia law, the applicable period of limitation upon a plaintiff's right to file a personal injury is two-years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[5] Although the limitation period is borrowed from State law, the question of when a cause

---

[5]    West Virginia Code § 55-2-12 provides as follows:

Every personal action for which no limitation is otherwise prescribed shall be

18

of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(en banc), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996)(citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await awareness by the plaintiff that his injury was negligently inflicted.'" Nasim, 64 F.3d at 955 (quoting Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly, for a Bivens action, "a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused it -- to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." Nasim, 64 F.3d at 955. To determine when a plaintiff possessed knowledge of his injury, the Court "may look to the common-law cause of action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" Brooks, 85 F.3d at 181 (citations omitted).

Furthermore, courts look to State law to determine whether the statute of limitations is tolled with respect to Plaintiff's Bivens claim and state law claims. Wallace v. Kato, 549 U.S. 384, 394 (2007)("We have generally referred to state law for tolling rules, just as we have for the length of the statute of limitations."); Rakes v. Rush, 2009 WL 2392097, * 5 (S.D.W.Va. Aug. 4, 2009)(J.

---

brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

Copenhaver)(citing <u>Board of Regents v. Tomanio</u>, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)). West Virginia recognizes the discovery rule, which tolls the statute of limitations until a claimant knows or by reasonable diligence should know his claim. <u>See</u> <u>Gaither v. City Hospital, Inc.</u>, 199 W.Va. 706, 487 S.E.2d 901 (1997); <u>also see</u> <u>Dunn v. Rockwell</u>, 225 W.Va. 43, 53, 689 S.E.2d 255, 265 (2009). The West Virginia Supreme Court discussed the proper application of the discovery rule as follows:

> [T]he statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breach that duty, and (3) that the conduct of that entity has a causal relation to the injury.

<u>Dunn v. Rockwell</u>, 225 W.Va. 43, 52-53, 689 S.Ed.2d 255, 264-65(2009)(quoting <u>Gaither v. City Hospital, Inc.</u>, 199 W.Va. 706, 487 S.E.2d 901 (1997)). Typically, a "plaintiff will 'discover' the existence of a cause of action, and the statute of limitations will begin to run, at the same time that the actionable conduct occurs." <u>Id.</u>, 225 W.Va. at 53, 689 S.Ed. 2d at 265. A plaintiff is "charged with knowledge of the factual, rather than the legal, basis for the action." <u>Id.</u> The issue of "whether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test" focusing on "whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, the elements of a possible cause of action." <u>Id.</u> Generally, a determination concerning the application of the discovery rule requires "resolution of factual questions by the trier of fact." <u>Id.</u>

The face of Plaintiff's Complaint reveals that Plaintiff alleges that Defendant Lilly and Goode knew of Plaintiff's medical conditions and knowingly failed to provide appropriate treatment. (Document No. 1, pp. 2 – 11.) It is undisputed that Plaintiff was evaluated and treated

by both Defendants on two occasions. Defendant Lilly's most recent treatment of Plaintiff occurred on July 7, 2014, and Defendant Goode's most recent treatment occurred on October 31, 2014. The undersigned finds that Plaintiff clearly had knowledge of the fact of his alleged injuries or pain, and Defendant Lilly's alleged failure to treat no later than July 7, 2014. The undersigned further finds that Plaintiff clearly had knowledge of his alleged injuries or pain, and Defendant Goode's alleged failure to treat no later than October 31, 2014. Plaintiff filed his Complaint in the District of New Jersey on November 17, 2016, asserting claims against Defendants Lilly and Goode. To the extent Plaintiff is seeking relief for Defendants Lilly and Goode's failure to treat Plaintiff's medical conditions, the undersigned finds that such a claim is untimely. Notwithstanding the foregoing, the undersigned will consider the merits of Plaintiff's deliberate indifference claim against Defendants Lilly and Goode in Section 4 below.

**3.    <u>Defendant Lucas</u>:**

In Defendants' Motion, Defendant Lucas argues that she is a United States Public Health Service Employees and is entitled to absolute immunity. (Document No. 77 and Document No. 78, p. 13.) In support, Defendants attach the Declaration of Ashley Stark (now Copolo), a PA employed at FCI McDowell. (Document No. 77-1, pp. 2 – 7.) PA Stark states as follows: "Kelly Lucas (nee Moore), the Health Services Administrator at FCI McDowell, is a Commissioned Officer in the United States Public Health Service." (<u>Id.</u>, p. 6.) In his Response in Opposition, Plaintiff fails to specifically address the above argument. (Document No. 93.) Plaintiff merely argues that "Defendant K. Lucas should be held liable for her action in this lawsuit mainly because she flat out lied about me not having a hernia to the Warden." (<u>Id.</u>, p. 1.) Plaintiff alleges that he had been diagnosis as having a hernia as early as February 4, 2014, and hernias "don't just come

21

& go on their own."[6] (Id., pp. 1 - 2.)

> Title 42 U.S.C. § 233(a) provides as follows:
>
> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damages for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim.

Thus, Congress made proceedings under the Federal Tort Claims Act the sole avenue to seek relief against a Public Health Service employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The United States Supreme Court has held that "[t]he immunity provided by § 233(a) precludes *Bivens* actions against individual [Public Health Service] officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment." Hui v. Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 1847, 176 L.Ed.2d 703 (2010)(stating that Section 233(a) "plainly precludes a *Bivens* action against petitioners by limiting recovery for harms arising from the conduct at issue to an FTCA action against the United States.") Defendant Lucas holds the position of the Health Services Administrator ["HSA"] at FCI McDowell. Thus, Plaintiff appears to allege that Defendant Lucas is responsible for failing to ensure that he was provided appropriate medical care. Defendant Lucas was clearly acting within the scope of her employment when performing functions pertinent to her position, such as her administrative oversight and supervision of the

---

[6] The medical records reveal that Plaintiff was diagnosed with a reducible hernia. A reducible hernia occurs when a hernia can be pushed back into the abdominal cavity, either spontaneously or with manipulation.

22

Health Services Department. Based on the foregoing, the Court finds that Defendant Lucas was a Commissioned Officer in the United States Public Health Service during the time period relevant to this Complaint and has absolute immunity from suit for all claims arising from the medical care provided to Plaintiff. The Court, therefore, respectfully recommends that Defendant Lucas' "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" be granted. The undersigned finds it unnecessary to consider the other reasons which Defendant Lucas has submitted for dismissal as to Plaintiff's Bivens claim.

4.    **Eighth Amendment:**

As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the

23

deliberate indifference standard of the Eighth Amendment. See <u>Pressly v. Hutto</u>, 816 F.2d 977, 979 (4th Cir. 1987); <u>Moore v. Winebrenner</u>, 927 F.2d 1312, 1316 (4th Cir. 1991) <u>cert. denied</u>, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); <u>also see</u> <u>King v. Rubenstein</u>, 825 F.3d 206, 218 (4th Cir. 2016)(quoting <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); <u>Iko v. Shreve</u>, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. <u>De'Lonta v. Angelone</u>, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." <u>Odom v. South Caroline Dept. of Corrections</u>, 349 F.3d 765, 770 (4th Cir. 2003); <u>also see</u> <u>Wilson</u>

v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

In his Complaint, Plaintiff contends that Defendants acted with deliberate indifference in violation of the Eighth Amendment by failing to provide Plaintiff with appropriate medical care for his hernia and abdominal, shoulder, knee, and leg pain. (Document No. 1, pp. 2 – 11.) Plaintiff appears to complain that Defendants disregarded his need for hernia surgery. (Id.) In their Motion, Defendants argue that Plaintiff cannot establish an Eighth Amendment medical claim of deliberate indifference. (Document No. 77 and Document No. 78, pp. 14 - 18.) Defendants argue that even assuming Plaintiff's medical need was objectively serious, Plaintiff cannot satisfy the subjective components. (Id.) Defendants contend that Plaintiff was provided with timely and proper medical treatment. (Id.) In Response, Plaintiff contends his "medical care was inadequate and the medical

staff and prison officials acted with deliberate indifference."[7] (Document No. 93, p. 3.) Plaintiff further argues that Defendant Carothers' cancelling of the consult request for a gastroenterologist and submitting a consult request for a general surgeon supports a finding of inadequate medical care concerning his hernia. (Id., pp. 3 - 4.) Plaintiff then appears to complain that he was sent to the "wrong doctor" because she was sent to a urologist instead of a general surgeon. (Id., p. 4.) Plaintiff contends that his requests for medical treatment were "ignored." (Id.)

As stated above, Plaintiff must first allege and eventually establish an objectively "sufficiently serious" deprivation. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that Defendants were

---

[7] A plaintiff must offer more than bare allegations or conclusory statements to survive a motion for summary judgment. See Silling v. Erwin, 881 F.Supp. 236, 37 (S.D.W.Va. 1995); also see Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)(citing Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001))(courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."); Evans v. Technologies Applications & Service, Co., 80 F.3d 954, 692 (4th Cir. 1996)(Summary judgment affidavits cannot be conclusory or based on hearsay); Moore v. United States, 1987 WL 11280 (S.D.W.Va. March 23, 1987)(Unsupported affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to either support or defeat a motion for summary judgment). Plaintiff must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "At the summary judgment stage, the non-moving party must come forward with more than "mere speculation or the building of one inference upon another' to resist dismissal of the actions." Perry v. Kappos, 489 Fed.Appx. 637, 640 (4th Cir. June 13, 2012)(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

aware that there was a substantial risk to Plaintiff's health or safety and that Defendants disregarded the serious physical consequences.

In his Complaint, Plaintiff alleges that Defendants acted with deliberate indifference in failing to provide Plaintiff with appropriate medical care for his hernia and abdominal, shoulder, knee, and leg pain. For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Plaintiff alleges that his conditions caused pain and suffering. Accordingly, the undersigned will assume for purposes of this motion that Plaintiff's medical needs were serious enough to give rise to an Eighth Amendment claim.[8]

Next, the undersigned will consider whether the above Defendants acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege the above Defendants' consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. A review of Plaintiff's undisputed[9] medical

_____

[8] For purposes of their Motion, Defendants do not dispute that Plaintiff suffers from a serious medical need. (Document No. 78, p. 15.)

[9] Plaintiff concludes that Defendant Goode and Lilly "lied on my medical records." (Document No. 93, p. 2.) Plaintiff concludes that Defendant Goode lied because he failed to note Plaintiff's hernia and indicated that Plaintiff had abdominal pain "on and off for 1 month." (Id., pp. 2 – 3.) Plaintiff states that he had been complaining of abdominal pain for nine months. (Id.) Plaintiff concludes that Defendant Lilly lied because she noted that "inmate does report family history of diabetes." (Id., p. 3.) Plaintiff states that he never reported such and he does not have a family history of diabetes. (Id.) Concerning Defendant Goode, the undersigned finds that the medical records support that Plaintiff's complaints of abdominal pain exceed one month. Defendant Goode's notes merely indicate that Plaintiff complained of increased pain for one month. As to Defendant Lilly's allege erroneous report of a family history of diabetes, such appears to be irrelevant. There is no allegation that Plaintiff was provided erroneous treatment based upon the erroneous notation of a family history of diabetes. At most, Defendant Lilly may have been

27

records reveal Plaintiff was incarcerated at FCI McDowell from December 12, 2013 to June 19, 2015. (Document No. 77-1, p. 2.) Plaintiff arrived at FCI McDowell on December 12, 2013, and Defendant Stark took Plaintiff's history and conducted a physical on December 16, 2013. (Document No. 77-1, pp. 32 – 44.) Plaintiff denied any painful conditions. (Id.) PA Stark ordered lab work and instructed Plaintiff on how to obtain medical, dental, and mental health care. (Id., pp. 32 – 44, and 84 - 86.) On February 4, 2014, Plaintiff reported to sick call complaining of foot pain, a "lump in his belly button," and urinary problems. (Id., pp. 23 - 26.) Defendant Stark conducted a physical examination of Plaintiff, including a prostate examine. (Id.) Defendant Stark ordered x-rays of Plaintiff's feet, lab work (blood, urine, and fecal occult blood cards). (Id.) Three days later, x-rays of Plaintiff's feet were conducted revealing negative findings except for mild degenerative joint disease. (Id., p. 79.) On March 6, 2014, Plaintiff reported to sick call complaining of urinary problems. (Id., pp. 21 - 22.) Defendant Lilly evaluated Plaintiff, diagnosed him with BPH and prescribed medication. (Id.) PA Lilly counseled Plaintiff that BPH was a common, noncancerous enlargement of the prostate gland which results in the compression of the urinary tube impeding the flow of urine from the bladder. (Id.) On March 24, 2014, Plaintiff was issued medical shoes for his foot pain. (Id., p. 58.) On May 5, 6, and 8, 2014, Plaintiff's fecal occult blood tests were noted as negative. (Id., p. 49.) On July 7, 2014, Plaintiff reported to sick call for a follow-up on his BPH symptoms. (Id., pp. 15 - 17.) Plaintiff further reported multiple joint pain and requested

---

negligent in incorrectly documenting a family history of diabetes. It is well recognized that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." *Webb v. Hamidullah*, 281 Fed.Appx. 159, 166 (4th Cir. 2008); *also see Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

that his hernia be checked. (Id.) Concerning his BPH, Plaintiff acknowledged that his symptoms of frequent urination and decreased stream had improved with the medication. (Id.) Defendant Lilly examined Plaintiff and ordered additional labs for a metabolic profile and rheumatoid factor, renewed Plaintiff's BPH prescription, and submitted a consultation request for Plaintiff to be evaluated by a gastroenterologist concerning his hernia. (Id.) About a week later, Plaintiff's lab tests were performed. (Id., pp. 73 – 75.) On July 23, 2014, approximately two weeks after Plaintiff's appointment with Defendant Lilly where he requested that his hernia be evaluated, Plaintiff submitted an "Inmate Request to Staff" requesting the return of his $6.00 co-pay. (Id., pp. 70 - 71.) Plaintiff complained that medical had requested approval for a "hernia operation," but medical had nothing else to help with his "pain and discomfort." (Id.) On July 31, 2014, the URC considered the consultation request for a referral to an "outside" gastroenterologist and determined that the consultation request would be tabled at that time. (Id., p. 72.)

On August 28, 2014, Plaintiff reported to sick call complaining of lower abdominal pain. (Id., pp. 12 - 14.) Plaintiff stated that "the pain started last night and continually got worse" and "he can no longer walk because of the pain." (Id.) Plaintiff's lab work was reviewed and Plaintiff was examined by Defendants Stark, Goode, and Dr. Alexis. (Id.) It was noted that Plaintiff had abdominal tenderness with palpation, but normal active bowel sounds, no guarding, no rigidity, no epigastric mass, and no suprapubic mass. (Id.) An x-ray of Plaintiff's abdomen was conducted, which revealed negative results. (Id., pp. 12 – 14, and 68.) Plaintiff was instructed to increase fluid intake and rest. (Id.) On September 3, 2014, a urine test was conduct and revealed normal results. (Id., p. 66.) On October 31, 2014, Plaintiff was evaluated by Defendant Goode concerning his complains of suprapubic abdominal pain. (Id., pp. 9 - 11.) Defendant Goode examined Plaintiff

noting suprapubic tenderness with palpation, but no guarding, no rigidity, no masses, no hepatomegaly, no splenomegaly. (Id.) Defendant Goode ordered lab tests including a CBC w/diff, comprehensive metabolic profile, lipid profile, urinalysis, CRP, E-ESR. (Id.) Defendant Goode submitted a consultation request for referral to an "outside" urologist with cystoscopy. (Id.) The URC considered and approved the consultation request the same day. (Id., p. 61 and Document No. 1-2, p. 36.) Plaintiff's labs were performed on November 3, 2014. (Document No. 77-1, pp. 271-73.)

On December 15, 2014, Plaintiff was evaluated by Defendant Carothers concerning his complaints of right shoulder pain, knee pain, and ankle pain. (Id., pp. 165-67.) Plaintiff reported difficulty urinating, but his PSA was recently normal. (Id.) Plaintiff acknowledged the prescribed medication helped his condition, but stated the medication did not fully cure the problem. (Id.) Defendant Carothers increased Plaintiff's prescription for Doxazosin to the maximum dosage for treatment of his urinary symptoms. (Id.) For his complaints of join pain, Defendant Carothers ordered an x-ray of Plaintiff's shoulder, ordered labs for rheumatoid factor, and provided a commissary slip for ibuprofen. (Id.) Within the next four days, Plaintiff's fecal occult blood tests were noted as negative and his shoulder x-ray revealed negative results. (Id., p. 269.) Less than two weeks after his appointment with Defendant Carothers, Plaintiff submitted an "Inmate Request to Staff" complaining of pain in his feet, ankles, knees, legs, and right shoulder. (Document No. 93-1, pp. 11 - 12.) Plaintiff further complained that he had an enlarged prostate and hernia that was causing him "extreme pain, discomfort, lack of sleep, and the inability to exercise." (Id.) Plaintiff requested his lab results and to have a preventive health care visit. (Id.) Defendant Carothers responded the same day notifying Plaintiff that he would be placed on call out. (Id.) One week

later, on January 7, 2015, Plaintiff was seen in Health Service for a preventive health visit. (Document No. 77-1, pp. 156-63.) Plaintiff reported pain in the arches of his feet and being unable to move his right arm above his shoulder. (Id.) Defendant Carothers noted that Plaintiff was recently tested for rheumatoid arthritis factor and the results were negative. (Id., 156 and 267.) Upon examination, Defendant Carothers noted a limited range of motion of Plaintiff's shoulder and an umbilical hernia. (Id., pp. 153-63) Defendant Carothers submitted a consult requests for referral of Plaintiff to an "outside" orthopedist his shoulder condition and a general surgeon for evaluation of the hernia. (Id.) Defendant Carothers counseled Plaintiff regarding diet and exercise, provided Plaintiff with Hemoccult cards to complete, issued an abdominal binder for Plaintiff's umbilical hernia, and issued arch supports for Plaintiff's feet. (Id.) Two weeks later, on January 21, 2015, Plaintiff submitted an "Inmate Request to Staff" requesting the status of his referrals to a urologist, orthopedist, and hernia specialist. (Id., p. 259.) On the same day, medical staff responded that Plaintiff's referrals to a urologist and orthopedist were "pending scheduling" and the general surgery consult concerning the hernia had been disapproved. (Id.) On February 9, 2015, Plaintiff was seen by Dr. Puranik, the "outside" orthopedist, concerning his shoulder pain. (Id., pp. 261-64.) Dr. Puranik diagnosed him with a rotator cuff sprain, administered a steroid shot, and recommended that an MRI be conducted. (Id.) Dr. Puranik further recommended physical therapy and to follow-up if pain persists. (Id.) The next day, on February 10, 2015, Defendant Carothers submitted a consult request for the MRI as recommended by Dr. Puranik. (Id., pp. 146-47.) Approximately three weeks later (March 3, 2015), the MRI was performed revealing probable tendinosis without discrete tear involving both the supraspinous and subscapularis tendons with mild degenerative hypertrophy of the acromioclavicular joint without impingement on the rotator

cuff. (<u>Id.</u>, pp. 256-57.)

On March 24, 2015, Plaintiff submitted a sick call request complaining of pain in his shoulder, legs, and feet. (Document No. 93-1, p. 16.) Next, Plaintiff stated that his prostate medication was no longer helping. (<u>Id.</u>) Finally, Plaintiff stated that his hernia was still causing pain and discomfort resulting in a loss of sleep and lack of exercise. (<u>Id.</u>) Medical staff responded the same day by notifying Plaintiff to watch call out for an upcoming appointment. (<u>Id.</u>) Two days later, on March 26, 2015, Plaintiff reported he was hit in the face with a ball while playing softball. (<u>Id.</u>, p. 255.) It was noted that Plaintiff's eye appeared to be swollen. (<u>Id.</u>) On April 12, 2015, it was noted that Plaintiff injured his right forearm during a softball game. (<u>Id.</u>) On April 16, 2015, Plaintiff reported to Health Service for his sick call appointment. (Document No. 77-1, pp. 140-43.) Plaintiff complained that "he is in so much pain he cannot run, it hurts to walk, he has very limited mobility in his right shoulder, it hurts to roll over in bed or sit up in a chair." (<u>Id.</u>, pp. 140-43.) Plaintiff further complained of stomach pain and stated that his BPH medication was not as effective as it was before. (<u>Id.</u>) Defendant Carothers noted that Plaintiff had two injuries logged within the last month while playing softball. (<u>Id.</u>) Defendant Carothers noted that Plaintiff initially denied playing softball, but "[a]fter a long discussion, while taking the inmate to get new compression stocking, he finally admits to playing softball." (<u>Id.</u>) Defendant Carothers examined Plaintiff, ordered labs, and order an abdomen x-ray. (<u>Id.</u>) PA Carothers changed Plaintiff's BPH medication to Flomax. (<u>Id.</u>) Approximately one week later, Plaintiff's abdominal x-ray was conducted revealing negative results. (<u>Id.</u>, p. 253.) On May 12, 2015, Plaintiff had his appointment with a "outside" urologist. (<u>Id.</u>, pp. 138-39.) Plaintiff was examined, and an ultrasound of the abdomen/pelvis was recommended. (<u>Id.</u>) On May 20, 2015, Plaintiff submitted an "Inmate Request

to Staff" complaining that he "went to a urologist and he said I was sent to the wrong doctor." (Document No. 93-1, p. 15.) On June 19, 2015, Plaintiff was transferred out of FCI McDowell. (Document No. 77-1, p. 6.)

Based upon the foregoing, Plaintiff cannot satisfy the subjective component. The foregoing does not exhibit that Defendants knew of and disregarded Plaintiff's need for medical treatment for his hernia and abdominal, shoulder, knee, and leg pain. The medical records reveal that Defendants and medical staff evaluated Plaintiff and provided treatment following each sick-call request and preventive care visit. Defendants, and FCI McDowell medical staff, consistently evaluated Plaintiff's conditions, ordered numerous urine[10] and feces tests, ordered blood tests including comprehensive metabolic profiles, CBCs with differential, lipid profile, CRP, E-ESR, and rheumatoid factor, issued medical shoes, arch supports, and an abdominal hernia belt, prescribed medications, ordered multiple x-rays of Plaintiff's abdomen, ordered x-rays of Plaintiff's feet, and ordered an x-ray and MRI of Plaintiff's shoulder. Defendants further submitted consult requests for Plaintiff to be evaluated by a gastroenterologist, urologist, general surgeon, and orthopedist. The URC approved the consult requests concerning the urologist and orthopedist, but "tabled" the request for the gastroenterologist and denied the request for the general surgeon. The record clearly reveals that Plaintiff was evaluated by an "outside" urologist and orthopedist. There is absolutely no indication that Defendants knew Plaintiff's medical conditions required additional testing or treatment and Defendants failed to order such.

---

[10] The undisputed medical records reveal that Plaintiff's urine was continuously checked and his prostate specific antigen ["PSA"] was consistently within the normal range. (Document No. 77-1, pp. 15, 86, 235, 251.) Plaintiff's PSA level was well within the normal range upon his transfer to FCI Fort Dix. (Id., p. 235.)

The record reveals that Defendants made sufficient efforts to diagnose and treat Plaintiff's symptoms. See Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998)(finding that a misdiagnosis of a pituitary tumor was insufficient to establish deliberate indifference where physicians treated symptoms presented by inmate and consulted with specialists); Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008)(a "negligence medical diagnoses or treatment, without more, do not constitute deliberate indifference"). In the instant case, Plaintiff appears to simply disagree with the appropriate course of treatment. Plaintiff contends he was sent to the "wrong doctor" because he was sent to a urologist instead of a general surgeon. As stated above, the record reveals that the consult request for a referral to a urologist was approved whereas the consult request for referral to a general surgeon was denied. The consult request for the urologist was made regarding Plaintiff's BPH, suprapubic abdominal pain, and urinary symptoms, whereas the consult request for the general surgeon was related to Plaintiff's hernia. Although Plaintiff may have preferred treatment for his hernia, this does not establish deliberate indifference. An inmate's disagreement with his medical care or the course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation."); Johnson v. Proctor, 2016 WL 165020, at * 6 – 7 (N.D.W.Va. Jan. 14, 2016)(finding that inmate's allegations that the physician made no

34

attempts to diagnose his head injury, provide treatment other than Tylenol, or order a MRI or CT scan were insufficient to state a claim upon which relief could be granted under the Eighth Amendment).

Furthermore, the mere fact that Defendant Carothers submitted a consult request for the evaluation of Plaintiff's hernia by a general surgeon instead of a gastroenterologist, does not establish that Defendants acted with deliberate indifference. Plaintiff's claim that the opinion of one doctor (Defendant Carothers) was better than the opinion of another doctor (Defendant Lilly), does not state a constitutional violation. See Lewis v. Proctor, 2010 WL 148383, * 3 (N.D.W.Va. Jan. 12, 2010)(an inmate's belief that one doctor's treatment plan was better than another's does not state a constitutional violation); Oglesby v. Abbassi, 2013 WL 4759249, * 7, n. 12 (E.D.Va. Sep. 4, 2013)("certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor"). Finally, Plaintiff's conclusory claim that Defendants knew of and disregarded Plaintiff's need for hernia surgery is insufficient. A plaintiff must offer more than bare allegations or conclusory statements to survive a motion for summary judgment. See Silling v. Erwin, 881 F.Supp. 236, 37 (S.D.W.Va. 1995); also see Perry v. Kappos, 489 Fed.Appx. 637, 640 (4th Cir. June 13, 2012)(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985))(a non-moving party must come forward with more than "mere speculation or the building of one inference upon another' to resist dismissal of the actions.") The record is absolutely void of any indication that Plaintiff needed surgery for his hernia during his placement at FCI McDowell.[11] When Plaintiff had his 14-evaulation on July 2, 2015, following his transfer to FCI Fort Dix, Dr. Patel noted that

---

[11] Although Plaintiff alleges that he was unable to exercise due to the extreme pain caused by his hernia, the record reveals that Plaintiff played softball on at least three occasions: March 26, 2015, April 12, 2015, and August 1, 2015. (Id., pp. 120-22, 255.)

35

the "mild" hernia was reducible. (Document No. 77-1, p. 125-27.) Plaintiff was approved for hernia surgery only after it was noted that the hernia was not fully reducible. (Id., p. 95, 99.) Based upon the foregoing, the undersigned finds that Defendants did not act with deliberate indifference in providing medical treatment for Plaintiff's conditions. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's Bivens claim.

**5.   Defendant Smith:**

In his Complaint, Plaintiff alleges that Defendant Smith was the Associate Warden of FCI McDowell. (Document No. 1, p. 3.) Plaintiff contends that Defendant Smith acted with deliberate indifference based upon Defendant Smith's Response to Plaintiff's "Inmate Request to Staff" submitted on July 23, 2014. (Id., p. 5.) Plaintiff claims that in his "Inmate Request to Staff," Plaintiff requested the return of his $6.00 co-pay. (Id.) Plaintiff further alleges that he reminded Defendant Smith that Health Services had requested approval for a "hernia operation," but complained that medical had done nothing else to help with his "pain and discomfort." (Id.) Plaintiff complains that Defendant Smith's "response was that since Petitioner was not in any chronic care clinics currently, so a charge applies for sick call appointments." (Id.) Thus, Plaintiff concludes that Defendant Smith acted with deliberate indifference to his medical needs. (Id.)

A prior review of the Docket Sheet in the instant case reflected that service had not been effectuated upon Defendant Smith. By Order entered on November 30, 2018, the undersigned noted that the Summons for Defendant Smith (along with other named defendants) had been returned unexecuted and directed as follows:

> [I]t is hereby **ORDERED** that Plaintiff shall provide the Court with an updated address for . . . Associate Warden Smith . . . by **December 31, 2018**. Failure of

Plaintiff to provide the Court with an updated address for the above Defendants by December 31, 2018, will result in a recommendation of dismissal of this matter without prejudice as to the above Defendants pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia.

(Document No. 45.) On January 2, 2019, Plaintiff filed a Motion for Extension to Time regarding the foregoing. (Document No. 46.) By Order entered on January 3, 2019, the undersigned granted Plaintiff an extension of time until February 4, 2019. (Document No. 47.) On February 5, 2019, Plaintiff provided the Court with updated addresses for Defendant Smith and other named Defendants. (Document No. 48.) Specifically, Plaintiff indicated "Reggie Smith"[12] as a defendant employed at Anthony Correctional Center. (Document No. 48.) By Order entered on February 6, 2019, the undersigned directed the Clerk to reissue service for Defendant Smith based upon the information provided by Plaintiff. (Document No. 49.) The Summons for "Ms. Smith" was returned unexecuted by the United States Marshal Service ["USMS"] on March 27, 2019. (Document No. 66.) Based upon information provided by the USMS, the Court noted there was a Reggie Smith employed as an Administrative Service Assistant with the West Virginia Division of Corrections and Rehabilitation at 1201 Greenbrier St., Charleston, West Virginia. (Id., p. 2.) By Order entered on March 28, 2019, the undersigned directed the Clerk to reissue service for Reggie Smith based upon the information provided by the USMS. (Document No. 67.) The Clerk issued the Summons the same day and it was returned executed on May 10, 2019. (Document Nos. 68 and 75.) On May 30, 2019, Defendant Smith filed the above Motion to Dismiss. (Document No. 81.)

---

[12] In his Complaint, Plaintiff named "Ms. Smith, Associate Warden," as a Defendant. (Document No. 1.) In Response to the Court's Order requiring updated addresses for Defendants, Plaintiff indicated "Reggie Smith" as a Defendant. (Document No. 48.)

In his pending Motion, Defendant Smith argues that Plaintiff's claim should be dismissed because "there are no allegations contained in Plaintiff's Complaint setting forth any alleged tortious activity conduct by or participated in by Defendant Smith." (Document No. 81.) Defendant Smith explains that he "never came in contact with FCI McDowell, or any of the inmates housed there, during the relevant time frame." (Id.) Specifically, Defendant Smith explains as follows: "At all times relevant hereto, Defendant Smith has been an employee of the State of West Virginia and has never come in contact with Plaintiff; has never had any job responsibilities that have placed him within a correctional facility; has never had any job responsibilities that have placed him in contact with inmates (state or federal); and has never been associated with the medical care or treatment of any inmates (state or federal)." (Id.) Finally, Defendant Smith states that he "incorporates by reference all applicable arguments and law set forth in 'Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment' (Doc. 77) and Defendants' Memorandum of Law in Support of Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 78) filed on or about May 14, 2019." (Id., 2, fn. 2.) As Exhibits, Defendant Smith attaches the following: (1) The Declaration of Reggie Smith (Document No. 81-1.); (2) A copy of the job description of a Purchasing Assistant (Document No. 81-2.); (3) A copy of the job description for an Administrative Services Assistant 1 (Document No. 81-3.); and (4) A copy of the job description for an Administrative Services Assistant 3 (Document No. 81-4.) Plaintiff failed to address Defendant Smith's Motion in his Response. (Document No. 93.)

As stated above, summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue

for trial. In his Declaration, Defendant Smith states that he has "never met the Plaintiff, or been in contact with or involved in the provision of services to Plaintiff." (Document No.81-1.) Defendant Smith states that he was a Purchasing Assistant for the West Virginia Division of Health and Human Resources for the State of West Virginia from 2009 to 2011. (Id.) Defendant Smith states that he was an Administrative Services Assistant with the West Virginia Division of Corrections, Account Payable/Finance Department, from 2011 to mid-2016. (Id.) Defendant Smith declares that at all time applicable to his employment, Defendant Smith has never had any job responsibilities that placed him within a State or Federal correctional facility. (Id.) Defendant Smith additionally declares that at all time applicable to his employment, Defendant Smith's duties have never put him in contact with any State or Federal inmates. (Id.) Defendant Smith states that his State employment has required him to report to work at 305 Capital Street, Charleston, West Virginia and 1201 Greenbrier Street, Charleston, West Virginia. (Id.) Finally, Defendant Smith declares that "I am not now and I have never been involved in the provision of any services, including medical services, to any inmate in federal custody housed at F.C.I. McDowell." (Id.) As stated above, Plaintiff fails to dispute Defendant Smith's Declaration. (Document No. 93.) Thus, the undersigned finds there is no genuine dispute as to any material fact. Based upon the undisputed evidence, the undersigned finds that Defendant Smith is entitled to judgment as a matter of law. Accordingly, it is hereby respectfully recommended that Defendant Smith's Motion (Document No. 81) be granted.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants Stark, Lilly, Lucas, Alexis, Collins, Goode, Vazquez-Valazquez, and Carothers' "Motion to

Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 77), **GRANT** Defendant Smith's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 81), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: December 11, 2019.

Omar J. Aboulhosn
United States Magistrate Judge

40